SAMUEL PATRICK *vs.* JAMES H. POTE & another.

Suffolk. March 8. — 10, 1875. COLT & AMES, JJ., absent.

In an action of tort for injuries sustained by the plaintiff by the falling of a bale of goods from a wagon, the evidence showed that at the time of the injury the plaintiff was upon the sidewalk, which was nine feet wide, in the act of loading a case of goods upon a truck; that he saw the wagon, and knew that it was backed up for the purpose of unloading, that the defendant's servant in charge of the wagon un-

fastened, in a proper place to unload, but without giving any warning, the rope by which the bales upon the rear of the wagon were bound thereto; that the plaintiff could not see the servant unfastening the rope, and did not look to see what he was doing; that when the rope was unloosed, one of the rear bales fell upon the plaintiff, causing the injury. The evidence was conflicting whether the plaintiff directed the servant to back up. The defendant's servant testified that he unfastened the rope on one side and then went round the rear of the wagon and unfastened it on the other side; that the plaintiff was not then behind the wagon. The plaintiff testified that he did not see the servant pass round the wagon. At the close of all the evidence, the defendant requested the judge to rule that the plaintiff had not shown that he used due care, and had not shown negligence on the part of the defendant. The judge declined so to rule, and ruled that the question of due care was for the jury, defining it, and instructing them that if the plaintiff did all that men of ordinary prudence would do under the same circumstances, although he put himself in a place of danger, he exercised due care. The jury found for the plaintiff. *Held*, that the defendant had no ground of exception.

TORT for personal injuries sustained by the plaintiff from the falling of a bale of goods upon him from a wagon, in charge of the defendants' servant, in a public street in the city of Boston. Trial in this court before *Morton*, J., who allowed a bill of exceptions in substance as follows :

The defendants were truckmen and teamsters. The plaintiff was foreman of Elder & Co., other truckmen and teamsters, engaged in their behalf at the store of one Wright cn Devonshire Street. The defendants' wagon, in charge of one Brown as teamster, was loaded with bales set on end in the wagon and on the tail-board.

The plaintiff testified as follows : " I was engaged in moving goods, and was injured by the team of the defendants, driven by Brown. Team was backed up. Took truck to move bale of goods from sidewalk, which was right behind defendants' team as backed up. Bales were bound on defendants' team. Brown unfastened rope, and two bales fell off, one falling on my leg as I was stooping down to load a case of goods on my truck. Received no warning — no outcry or warning by Brown. Bird directed me to remove the case. Did not see Brown back up. Saw the load after it was backed up. Knew it was backed up to unload. Was a proper place to unload. Saw the bales that fell before they fell. They leaned off the wagon. Saw rope around them that held them on until the rope was unfastened. Brown went and unhitched rope. He was on his team when I first saw him. Rope had got to be unfastened before bales would

come off. Brown unloaded in usual way. Did not watch to see him unfasten the rope. He was about a minute unfastening. No one was with him. Bird was standing talking with clerk, back to him; Brown on nigh side of wagon, not in sight of him. Can't say how large load was — wagon full. I stood on nigh corner of team. Wagon was obliquely to sidewalk, not square to it. Did not speak to Brown when he was unhitching, nor look to see whether he was unfastening the rope, or was engaged in unfastening the rope when he went to get the case behind his team, and while he was loading the case. Did not see Brown pass round the wagon."

Thomas H. Bird testified: " Was shipping-clerk for Wright & Co. Was present when plaintiff was injured. Stood on Devonshire Street. Saw defendants' team back up. Bales fell within minute after team backed up. Plaintiff was just putting case on truck. He was standing back to team when bales fell off. Turned when they fell. Did not see Brown when the team backed up. Heard no warning or notice given by Brown when bales fell." Cross-examined. " Back was turned to team when bale fell. Team there about one minute before I turned. Walked a short distance. Gave Brown orders where to back up, and he backed up where I told him to. Gave orders to Patrick after team backed up to remove case. When he backed up, can't say whether he was on team or not. Did not see Brown after I gave orders to him to back up until after accident. Did not tell Brown that plaintiff was there or was going to remove case. Brown did not unfasten rope in sight of plaintiff. Patrick could not see Brown when he unfastened the rope. The bales tipped back on the tail-board. Loaded in usual way."

Wm. E. Norwood testified: " I saw accident. Brown backed up; remained a short time; then went round to loose his rope, and the bale fell; Brown gave no notice or warning. Brown was not in sight of Patrick."

Emery Brown testified for the defendants : " Was teamster for defendants. Was loaded at the time of the accident with bales of goods, brought from railroad. Carried them to Wright's. Saw Patrick, and he told me where to back up and unload — the only man I saw. Plaintiff was on the sidewalk. Backed up where he said. Bird had usually told me where. Then commenced

unbinding load. Was on team till I backed up. Unfastened the rope in two places on one side, then went round to hind end of wagon and unfastened the rope on the other side, and two bales fell off. Did not know plaintiff was there. Was not there, and I did not see him anywhere when I went round the end of the wagon. No one told me to wait for removal of the case. Was one case on sidewalk in rear of wagon when I backed up. Did not know he was there, or was going there to remove the case. First I knew of his being there was when he hollaed, upon the bale falling on him. Stood backward to the hind end when I unfastened the rope. Plaintiff was nowheres near when he told me to back up. Been in the habit of loading goods. Was loaded in the usual manner. No one was behind the wagon when I started to unload." Cross-examined. "Backed right up to sidewalk: got off. Spoke to no one, but went and unbound the load. Rope made fast in several places; took a minute to unfasten it. Had to untie in four or five places. Did not sing out or give any warning, or look to see if any one on sidewalk. Could not have seen any one who was on the sidewalk from my position. Walked round hind end of wagon to unload. Did not examine to see how bales stood." Re-direct. "Wagon obliquely to sidewalk. No one on sidewalk at the time. No one behind wagon when I went round. Saw nothing to indicate that plaintiff was there. One bale fell on sidewalk, the other in street, between hind end and the curbstone."

One of the defendants testified, uncontradicted, that the sidewalk was nine feet wide. The plaintiff, being recalled, denied that he gave Brown orders to back up. Said he did not speak to him when he was unloading, or take care to look to see if he was unhitching, or take pains to ascertain or look to see if he was engaged doing it. Did not see Brown pass round the wagon.

Upon this evidence, on the question of due care and negligence, the defendants contended, and asked the judge to rule as matter of law, that the plaintiff could not recover; that there was no evidence to show that he exercised due care, or that the defendants were negligent, but the reverse. The judge refused so to rule.

The defendants contended that the plaintiff being a teamster, and knowing the process and mode of unloading, and the defend-

ants' teamster being known to have backed up, and to be in the position to unload, and about to do so, the plaintiff was not in the exercise of due care in going at that time to the hind end of the wagon to take a case of goods away, when he saw the bales were in a position to fall off as soon as the ropes were unfastened, and had reason to apprehend it; and in thus putting himself in a place of danger without first looking and seeing whether the teamster was unhitching the ropes; that he was bound to use his senses to guard against apparent peril, and had no right to thus incur it.

The judge ruled that the question of due care and negligence was entirely for the jury, defining what it was; and instructed the jury that if the plaintiff did all that men of ordinary prudence would do under the same circumstances, although he put himself in a place of danger, this was due care.

The jury found for the plaintiff, and the defendants alleged exceptions.

*A. A. Ranney*, for the defendants.

*S. B. Allen & J. D. Long*, for the plaintiff, were not called upon.

DEVENS, J. This case could not properly have been withdrawn from the jury, and the instructions under which it was submitted were correct.

Whether the plaintiff, who was about to remove a case of goods from the sidewalk by the direction of his employer when the defendants' wagon backed up to the sidewalk, was in the exercise of due care in continuing his work where he would probably be subjected to injury if the load from the defendants' wagon was suddenly and without warning discharged upon the sidewalk, and whether the defendants' servant in thus discharging his load was wanting in due care, so that injury to the plaintiff occurred thereby, were questions to be determined by the jury. Even if the circumstances under which the injury occurred were not in dispute, (and the important question whether the plaintiff directed the defendants' servant where to back up and unload was thus controverted,) the inference to be drawn from them was not a legal deduction, but one of fact.

After the court had defined what due care and negligence were, it was for the jury to apply these definitions to the evi-

dence, and to say whether or not it had been proved that the plaintiff, while himself exercising due care, had been injured by the negligence of the defendants' servant.

The instruction given, " that if the plaintiff did all that men of ordinary prudence would do under the same circumstances, although he put himself in a place of danger, this was due care," is not open to the criticism made by the defendants' counsel, who argues that men of ordinary prudence often act imprudently, and that the possession of ordinary prudence does not necessarily imply sense and capacity, and therefore that the verdict might have been rendered upon a construction of this ruling which tested the conduct of the plaintiff by that of one who possessed of ordinary prudence did not act according to its dictates, or of one who did not have ordinary sense and capacity. The ruling admits of no such forced or unnatural interpretation, and we cannot doubt that it was clearly understood by the jury that the plaintiff, in order to show that he was in the exercise of due care, must prove that he had acted as men of ordinary prudence, exercising this faculty, and possessed of sufficient sense and capacity to act intelligently, would have acted under similar circumstances.                                    *Exceptions overruled.*