[No. 4244.   Decided July 19, 1902.]

CHARLES J. STACK, *Respondent*, v. G. NOLTE *et al., Appellants.*

FALSE REPRESENTATIONS AS TO VALUE — WHEN STATEMENTS OF EXISTING FACT.

False representations as to the value of land, made in order to procure a conveyance thereof, constitute actionable fraud, on the theory that they become representations of existing fact, where the land is remote, the grantor has not been on it for more than ten years, is ignorant of its market value, and is given but one day in which to close the deal, upon the representation that he is in danger of losing the land through tax foreclosure, and if he does not sell at once he will never realize a cent.

SAME — NEGLECT TO ASCERTAIN TRUTH — WHEN PARTY AT DISADVANTAGE.

The rule that one cannot be relieved on the ground of fraud when he has neglected to use the means at his command for ascertaining the truth before acting would not defeat recovery by one who had been induced to part with land situate 3,000 miles away, where he was ignorant of the laws of the state where the land was located, and relied upon the representations of an attorney from that state that he was about to lose the land under tax proceedings and all he could realize therefrom was the inadequate price offered for a quit claim deed by the tax purchaser in order to clear his title.

CANCELLATION OF DEED — INADEQUACY OF PRICE.

Under such circumstances, the rule that mere inadequacy of price is not sufficient to afford ground for equitable relief is inapplicable.

SAME — EVIDENCE.

In an action by a grantor to cancel a deed on account of fraud in the procurement, evidence that defendants procured possession of tax certificates against the same property by false representations to the holders that they represented plaintiff and were authorized to pay his taxes, was admissible for the purpose of establishing a link in the preconceived scheme to fraudulently procure a conveyance from plaintiff, by beginning foreclosure proceedings and then representing to plaintiff that they held the tax title to his land.

Appeal from Superior Court, Skagit County.—Hon. GEORGE A. JOINER, Judge. Affirmed.

*Kerr & McCord,* for appellants.

*James F. McElroy* and *Million & Houser,* for respondent.

The opinion of the court was delivered by

HADLEY, J.—This action was brought by respondent against appellants to compel the surrender of a certain quit claim deed, and for other relief as hereinafter indicated. The complaint alleges, substantially, that respondent was at all times mentioned the owner of certain real estate in Skagit county, Washington; that on the 10th day of November, 1899, there were delinquent and unpaid taxes owing upon said land for the years from 1891 to 1896, inclusive, in the sum of $162.26; that at the same time there were also due upon the same land taxes for the years from 1897 to 1899, inclusive, in the sum of $69.57; that on said date the appellants Smith and McDonald procured from the treasurer of said county a certificate of delinquency upon said land for the taxes due for the year 1896

and prior years, and at the same time they paid to the treasurer the subsequent taxes above mentioned; that on the 9th day of February, 1901, appellant G. Nolte, at the instigation of appellant Eaton, commenced an action to foreclose said certificate of delinquency, and alleged in the application for the judgment of foreclosure that on the 22d day of December, 1900, said Smith and McDonald assigned to said Eaton all their interest in said certificate, and that on the 29th day of January, 1901, said Eaton assigned and transferred the same to said G. Nolte; that said action is still pending; that said Eaton and Nolte did on or about the 22d day of December, 1900, enter into a conspiracy for the purpose of defrauding respondent out of said land, and in pursuance thereof said Eaton approached said Smith and McDonald and represented that he and said Nolte were the agents of respondent, and were desirous, in behalf of respondent, of paying said taxes, and said Smith and McDonald, relying upon and believing said representations, accepted the money due on said certificate of delinquency, and surrendered it to said Eaton and Nolte, who thereupon pretended and claimed that it had been assigned to them, and caused said action to be brought to foreclose the same; that in pursuance of said conspiracy said Eaton, representing said Nolte, went to the home of respondent, at Akron, in the state of Ohio, and then and there, on the 4th day of May, 1901, well knowing that respondent was in entire ignorance of any action having been taken for the purpose of acquiring tax title to said property, did pretend and represent to respondent that said land had been sold for taxes, and that respondent no longer had any valid or subsisting interest therein; that said representations were false, and were well known by said Eaton to be false at the time they were made, and were made by him for the purpose of inducing respondent to convey said

land for a sum much less than its real value; that respondent, not having been a resident of the state of Washington for several years, and being ignorant of the laws of said state and the procedure necessary to procure a tax title to the property, was led to believe said representations, and did believe and rely upon the representations that he had no further subsisting interest in said land; that said Eaton represented at the said time that the only purpose for which he desired a conveyance was to clear up the title, assuring respondent that he, respondent, had no substantial right thereto, and offering to pay him $500 for a quitclaim to the property; that respondent, in ignorance of his true rights, and in ignorance of the facts, and being induced by said false statements, did execute and deliver to said Eaton a quitclaim deed to said property, conveying the same to said G. Nolte; that at the time of making said representations, said property was, and it is now, of the value of $2,500; all of which facts were well known to said Eaton and Nolte, but were unknown to respondent, and respondent relied upon said Eaton's representation that said property was of no greater value than $500. It is further alleged that said Nolte and Eaton threaten to file said deed with the auditor of said Skagit county, thus placing the record title of the property in said Nolte, and that, if they be permitted to do so, a cloud will thereby be placed upon respondent's title, and he will suffer irreparable damage in consequence thereof; that respondent now tenders into court the amount of said taxes, together with all interest, penalties, and costs, and also tenders the said sum of $500. A restraining order is prayed, prohibiting appellants from taking any further steps in said foreclosure proceedings, from placing said deed of record, or from conveying the land to any person pending this action. It is further prayed that upon the trial of the cause upon its merits, the

court shall compel the surrender of said deed into court for cancellation, and that the court shall adjudge to whom the taxes are payable, and shall grant any other proper relief. The answer, in the main, consists of denials of the material averments of the complaint. The cause was tried by the court without a jury. The court found, in substance, as follows: That respondent acquired title to the land from the United States about the year 1891; that appellant G. Nolte is the owner and holder of tax certificates thereon for the years 1891 to 1899, inclusive, and that there is now due and owing him thereon, together with interest, the sum of $353.46; that on the 4th day of May, 1901, at Akron, in the state of Ohio, the appellants procured from respondent a quitclaim deed to said property, which deed is now in the possession of appellant Neal, as auditor of said Skagit county, and is held by him by virtue of a stipulation between the parties that he shall retain it subject to the final determination of this cause; that, for the purpose of procuring said deed, false representations and statements were made to respondent, upon which he relied, and was thereby induced to execute and deliver the same in consideration of the sum of $500; that the property was at the time of the execution of the deed of the value of $1,600; that respondent announced at the time of the trial that he was ready and willing to deposit with the clerk of the court the said sum of $500, together with interest thereon from May 4, 1901, at the lawful rate, and to likewise deposit, for the benefit of the holder of said certificate for taxes, the full amount thereof; that, if said false statements and representations had not been made to respondent, he would not have executed and delivered said deed. Upon the foregoing facts the court concluded, as matters of law, that respondent is the absolute owner of the land, and that said deed is void; that appellants are entitled to have repaid the said

sum of $500, with interest from the date respondent receiv-
ed it, and that they are also entitled to have paid them
said sum of $353.46, taxes, and interest thereon; that, upon
the payment of such sums forthwith into the registry of
the court, a decree be entered directing the appellant Neal
to surrender said deed to respondent; that appellants be
enjoined from asserting any right or claim to said land, or
any part thereof. Thereafter judgment was entered upon
the foregoing, which recites that respondent has deposited
with the clerk of the court the sum of $865,—the same
being the amount directed to be paid for the use and benefit
of appellants, and it is adjudged and decreed that the deed
in the possession of appellant Neal be surrendered to re-
spondent for cancellation, and that the appellants, and each
of them, and all persons claiming through or under them,
be forever enjoined from asserting any right or title to the
land. From said judgment this appeal was taken.

A number of distinct errors are assigned, but they are
all grouped by counsel, in argument, under two general
heads, as leading propositions involving all questions
raised. The first of these is that the evidence is wholly
insufficient to justify the findings of the court as to fraud-
ulent representations on the part of appellants. In this
connection the evidence shows that appellant Eaton was an
attorney at law then residing in Seattle; that, as the em-
ployed attorney and agent of appellant E. L. Gaudette, he
traveled from Seattle to Akron, in the state of Ohio, having
learned that the latter city was respondent's place of resi-
dence; that he at once sought an interview with respond-
ent at his place of business, and, after introducing himself,
inquired of respondent if he ever owned some land in
Skagit county, Washington. He was answered in the af-
firmative. Eaton himself testified that he then said to re-
spondent that the land was about to be sold for taxes, and

that he handed him a copy of the complaint and summons
in the above mentioned foreclosure proceedings, which
showed that judgment would, or at least could, be taken
within a few days; that he then offered respondent $250 for
a quitclaim deed to the land, which was refused, and, after
further negotiations, respondent agreed to accept $500 for
such deed; that such deed was then made out,—the appel
lant G. Nolte being, at the request of Mr. Eaton, made
grantee therein,—and the deed was placed with a bank, in
Akron, with instructions to deliver it to Eaton upon the
receipt of $500 for respondent's use, directions for the
payment of which were expected by telegram from a bank
in Whatcom, Washington.    Two days later such instruc-
tions were received, the money was paid to respondent, and
the deed delivered to Eaton.   What the real interest of ap-
pellant G. Nolte may have been, does not clearly appear.
Appellant E. L. Gaudette seems to have furnished the pur-
chase money, and also the expense money of said Eaton,
but the deed was taken as aforesaid.   Nolte was at least the
apparent owner of the tax certificates, and the foreclosure
proceedings were being prosecuted in his name.   Respond-
ent testified that Eaton told him the land had already
been sold for taxes, and that he had no real interest left
therein, but, in order to clear up the tax title, he would
pay him $250 for a quitclaim deed; that the land was not
worth to exceed $500, and that respondent must "do bus-
iness" with him on that day, or he would never realize one
cent from the land; that respondent had left the state of
Washington in 1891, and did not know the value of the
land under conditions as they existed at the time said Eaton
came to him.   It appears that the land is chiefly valuable
for its timber.   It was then situate between one and two
miles from a railroad, and contained a quantity of valuable
timber.   Respondent further testified that he relied upon

said Eaton's statements that the land was not worth to exceed $500, that his interest had really been divested by tax procedure, and that the deed was desired only for the purpose of clearing up what is ordinarily called a "tax title;" that, but for such statements and representations, he would not have executed the deed. The witnesses varied in their valuation of the land; some placing it as high as $2,500, the amount alleged in the complaint. We think the court's finding of value at $1,600 is amply supported by the evidence. Respondent in some essential particulars is corroborated by other witnesses who were present at the time Eaton called upon him. The $500 paid respondent, together with the accumulated taxes, interest, and penalites, amounted to a few dollars more than half the value found by the court. Appellants invoke the principle that mere expressions of opinion as to value, even though erroneous, do not constitute such fraud as will afford ground for rescission of an executed contract; citing 2 Warvelle on Vendors, page 853. Reference to the above text discloses that the author states the rule as follows:

"   .   .   .   if it was the expression of a matter of opinion or of fact equally open to the inspection of both parties, and in regard to which neither could be presumed to trust the other, there is no need for equity to interfere or to grant relief on the ground of fraud."

It is manifest that the land in question was not equally open to the inspection of both Eaton and respondent at the time the alleged represention as to value were made. They were then thousands of miles distant from the land. Eaton had just come from the vicinity of its location, was familiar with its surroundings, and knew its value. Respondent had not been upon the land or in its vicinity for more than ten years. He was wholly uninformed as to its true market value, or as to the tax procedure for establishing

tax titles in the state of Washington. To get such information required the expense and time for a trip over a long distance, or at least the delay occasioned by correspondence; and since respondent says he was told by Eaton that he must deal with him on that day, or never realize a cent for the land, the inducement to rely upon the statements and act at once was such as ordinary human nature is not apt to resist; and such representations, made under such circumstances, we think, become questions of fact, and not of opinion, and, if false, present a case of fraud.

"Whenever a party states a matter, which might otherwise be only an opinion, and does not state it *as the mere expression of his own opinion,* but affirms it *as an existing fact* material to the transaction, so that the other party may reasonably treat it as a fact, and rely and act upon it as such, then the statement clearly becomes an affirmation of fact within the meaning of the general rule, and may be a fraudulent misrepresentation. The statements which most frequently come within this branch of the rule are those concerning value . . . It is an essential requisite, both in equity and at law, that the representation, whatever be its form, must be made for the purpose and with the design of procuring the other party to act,—of inducing him to enter into the contract or engage in the transaction. It must, therefore, be, of necessity, preliminary to the actual conclusion of the transaction, and in the great majority of instances it is made during and forms a part of a negotiation between the parties, which terminates in the contract or other transaction." 2 Pomeroy, Equity Jurisprudence, §§ 878, 879.

See, also, *Baum v. Holton,* 4 Colo. App. 406 (36 Pac. 154); *Whitney v. Richards,* 17 Utah, 226 (53 Pac. 1122); *Griffin v. Farrier,* 32 Minn. 474 (21 N. W. 553); *Tyler v. Black,* 13 How. 230; *Haygarth v. Wearing,* L. R. 12 Eq. 320.

The cases of *Tyler v. Black* and *Haygarth v. Wearing,*

*supra*, are similar to the case at bar, in that the false repre-
sentations were made by a vendee to a vendor in order to
induce the vendor to convey.   In each case the contract of
sale was rescinded by reason of the fraudulent represen-
tations of the vendee.   The other cases cited apply to the
general principle that false representations made    by    a
vendor with the intent to induce a vendee to buy, which are
relied upon under circumstances similar to this case, where
the property is remote from the parties at the time, become
representations of fact, and not of opinion, and constitute
actionable fraud.

Appellants also invoke the rule that mere inadequacy of
price is not sufficient to establish fraud or furnish ground
for equitable relief.   It is true that fact of itself does
not establish fraud, but when representations as to value
are made, which fix it at a manifestly inadequate sum,
and when they are made for the purpose of inducing one to
part with his property for such inadequate amount, under
circumstances which place him at a disadvantage, they may
become actionable fraud.   As applying to the principle
that one cannot be relieved on the ground of fraud when he
has neglected to use the means at his command for ascer-
taining the truth before acting, appellants cite a number of
decisions of this court, but in those cases the means for ac-
quiring knowledge concerning the subject matter were
close at hand, and the truth was easily ascertainable.   It
was held that relief will not be granted on the ground of
fraud when one so grossly neglects to use the opportunities
immediately at hand.   The alleged false representations in
this case were not confined to those concerning value, but
related, also, to the condition of the tax lien, and the pro-
cedure to enforce the same.   Respondent was as ignorant
of the facts upon that subject as he was of those concerning
value.   He is a tailor by occupation, and Mr. Eaton was not

only a lawyer from the state of Washington, familiar with the law relating to tax procedure, but having knowledge of the exact situation as to these particular taxes. He denies that he told respondent that a tax sale had been made, or that respondent had no interest in the property. Thus there is conflict in the evidence. But even the tax complaint and summons handed respondent disclosed that such a sale would at least be made in a short time. Being ignorant of the real effect of the tax proceedings, it seems reasonably clear from the evidence that respondent was induced by what was said upon that subject, supplemented by the statements as to value, to believe that his only opportunity to realize anything from the land was then at hand. Under all these circumstances, they cannot be said to have been dealing at arm's length, but respondent was at a decided disadvantage. The evidence is such that we will not disturb the findings of the trial court.

The next error assigned is that the testimony of appellants Smith and McDonald was admitted as to alleged fraudulent representations made by appellant Eaton at the time of the assignment of the tax certificates. The theory upon which the testimony was admitted was that the representations were a part of a preconceived scheme to fraudulently procure a conveyance from respondent; that, while neither Eaton nor said Nolte in any sense represented respondent, yet, by representing to Smith and McDonald that they were authorized by respondent to pay his taxes, they thus procured possession of the certificates, which enabled them to begin foreclosure proceedings, and afterwards to go to respondent and represent that they held the tax title to the land. Under this theory, we think the testimony was admissible. Upon this point appellants cite *McKay v. Russell,* 3 Wash. 378 (28 Pac. 908, 28 Am. St. Rep. 44), but in that case the alleged representations

sought to be shown related to another and entirely different transaction, and were in no manner connected with the one under investigation. But the evidence complained of here was introduced on the theory that it was a link in the chain of fraudulent acts leading up to the final consummation of the conspiracy to procure a deed from respondent.

We find no error, and the judgment is affirmed.

REAVIS, C. J., and FULLERTON, MOUNT, ANDERS, WHITE and DUNBAR, JJ., concur.