### STOKES et al. v. STOKES et al.

No. 960.

Court of Civil Appeals of Texas. Eastland.
March 18, 1932.

Rehearing Denied April 22, 1932.

Blanton, Blanton & Blanton, of Albany, for appellants.

D. T. Bowles, of Breckenridge, for appellees.

### LESLIE, J.

This is a suit by the plaintiffs against the defendants for damages alleged to have been occasioned them by a fraud perpetrated upon them, in that said defendants overreached them by means of an artifice or trick employed to induce them to sell certain lands at a price far below its value. The defendants answered separately by general denial, special defenses, and some of them presented cross-actions. The trial was before the court without a jury. Judgment was rendered denying plaintiffs recovery and removing cloud (plaintiffs' claim) from title to the land in response to a cross-action of the defendant, Cora Ford Stokes, to whom the land was ultimately conveyed. From this judgment the plaintiffs appeal. There are no findings of fact or conclusions of law in the record. The parties will be referred to as in the trial court.

The appeal is predicated on five propositions of law. The first, second, third, and fifth contest the sufficiency of the testimony to support the judgment. An examination of the statement of facts leads us to the conclusion that the judgment, in the respects it is here attacked, has such support in the testi-

mony that we would not be authorized to set it aside, and further discussion of these propositions is deemed unnecessary.

The fourth proposition presents a different question. It challenges the correctness of the court's ruling in excluding certain testimony, and, in passing upon the proposition raising this question, and to fully reflect our reasons for the ruling we shall make, it becomes necessary to state, in substance at least, the purported facts out of which the lawsuit grows:

The plaintiff, Blanche V. Stokes, aged seventy-nine years, is the mother of the defendant Albert W. Stokes. She and the other plaintiffs (except one who resides in Gray county, Tex.) resided in California. None of them lived in Stephens county, where the land in question was situated, and where the defendant Albert W. Stokes and wife reside. The plaintiffs and the defendant Albert W. Stokes were the co-owners of the land; his interest amounting to 21¼ per cent. thereof. The plaintiffs were known by said Stokes to be in straitened financial circumstances and desirous of selling the land. He represented himself as being in a like situation financially, and was anxious to sell for the best price obtainable. The land was surrounded by ranch lands owned by the defendant Ball, who had leased it for pasturage purposes for twenty-five or thirty years, and who had a preference right to buy it when it was placed on the market.

Under these circumstances, the plaintiffs charge that the defendants entered into a conspiracy to defraud them by an artifice through which they were caused to sell their interest in the land for $4,500, a sum represented by the defendants, and especially Albert Stokes, to be the "top" or highest available price obtainable for the land, when they, and especially he, at the time of making such representations, knew that it was possible to obtain $11,000 for the same, or a market value greatly in excess of $4,500.

The testimony discloses that for some time prior to the sale of the land the defendant Stokes had been in communication with his mother, and through her with the other plaintiffs, relative to a sale of the surface of sections 1216 and 1256, T. E. & L. Co. lands, Stephens county. It is clear from the testimony that said Stokes designed to purchase or become the owner of the property, and he and the defendant Ball conceived the plan or scheme to effect that end and to do so without disclosing such purpose to the plaintiffs, the other co-owners of the land. At least said Ball, without apparent compensation or hope of reward, lent himself to the plan to enable said Stokes to acquire the property for $4,500. The scheme originated after said Ball had indicated he would like to buy the land under his option. At the time of such suggestion by Ball, Albert W. Stokes informed him that he wanted to purchase the land for a home. Upon receipt of that information, Ball stated to Stokes that, if he was going to buy it for a home, he (Ball) "would not bid against him," but "would leave it up to him." By reason of Stokes' desires in the premises, Ball agreed that he "would not run the price up," and that he "would not try to get ahead of him." Such conduct on the part of Ball was evidently in keeping with his understanding with Stokes, arrived at in said conversation. The understanding went further, in that by it said Ball was to act as the agent of said Stokes, pretend to be the actual purchaser of the property, and to offer the plaintiffs and the defendant Albert W. Stokes, as a top price for said land, the sum of $4,500 and thereafter deed the property, if acquired, to Stokes, who agreed to furnish the total consideration for the purchase of the same. Ball further testified: "He, (Stokes) was buying the land in my name; yes, all that I had to do was just to make the offer. * * * I went through Albany and made the bid. * * * He said he would furnish the money and it would not cost me one cent."

This, in a substantial way, indicates the artifice or scheme alleged to have been employed by the defendants in order to acquire the property for the defendant Stokes. As noted, the land was situated in said Ball's pasture. He had the ability to purchase the same, a preference right to do so, and was apparently the most available or probable purchaser, viewed from any standpoint, and especially that of the plaintiffs. Combined with these innocent appearing circumstances, the defendant Stokes was a co-owner of the land, pretending to be in like financial circumstances as the plaintiffs, desirous of selling and recommending a sale for a sum which the other plaintiffs might naturally assume was the highest which his self-interest could obtain. With these circumstances as a talking point, and with his precise interest in the matter well disguised by an ingenious artifice, the defendant voluntarily undertook to induce the plaintiffs to join him in a sale of the lands to Ball, while in fact, though all unknown to the plaintiffs, it was a sale to himself by the plaintiffs of their interest for a price which he himself was paying, and which, under the circumstances, he compelled them to accept. To the plaintiffs Ball was an outside purchaser, uninterested in the land from the standpoint of Albert W. Stokes. To the plaintiffs said Albert Stokes was a seller, interested in obtaining the highest price, while in fact and behind the artifice he was the purchaser, the vendee, bent on acquiring the property for the lowest price possible, and protesting to them that $4,500 was the best available price. Further, according to the plaintiffs' theory, the defendant Stokes not only presented the disguised appearance above indicated, but in connection therewith operated under a scheme which took Ball, the

most probable purchaser, out of the market and converted him into an instrument of deception, tending to mislead them on the question of the true value of the property, as well as the best price obtainable.

Further analyzing the testimony, and without any intention of expressing any opinion as to its truthfulness or falsity here or elsewhere in the opinion, it appears that, in the further pursuit of the artifice, the defendant Stokes on numerous occasions advised his mother of the advisability of selling the property to said Ball for the consideration stated. October 21, 1927, among other things, he wrote her: "Mr. Ball still wants to buy the surface of Surveys 1256 * * * and 1216. He told me he would pay $4,500.00 cash for the surface only. * * *" December 6, 1927, he wrote, urging her to immediately take up the matter of the sale with his sisters, and concluded by saying that he "would like to give Mr. Ball an answer before January 1st, 1928, as another year's taxes are assessed then." December 23, 1927, he wrote her: "I hope you will all see sale of surface * * * as I do. While not a big price, it is all we can get. * * * So I hope you will accept the offer." January 3d, he wrote her: "I am enclosing you my check for $10.00, and will also pay the balance in full out of my share of money coming from sale of surface of 1256 and 1216 to Mr. Ball."

Other testimony indicates that he was indebted to his mother, and was suggesting that as one reason why he wanted to sell to Mr. Ball and thus acquire sufficient funds to pay her the balance.

In addition to the above, representations in substance the same, though not so extensive, were also made to the local agents of the plaintiffs, and the plaintiffs and agents testified alike that such representations were not only made but believed and relied upon by them in closing up the deal.

Further, at one time in the prosecution of the scheme, it seems that Ball and Stokes paused to consider a certain phase of the transaction. This was prompted by a suggestion of Ball that he did not want to be a party to the deal outlined, as the plaintiffs would see the deed from him to Stokes, and would "feel hurt." To this Stokes replied he would leave the deed from Ball off the record for "six or eight months or a year"; that is, leave it in Ball's name. Such is Ball's version of this incident, but in any event the negotiations proceeded and the evidence discloses that the deed to Ball was dated February 1, 1928, filed that day for record in Stephens county, and that on the same date Ball, upon the direction of Stokes, deeded the land to the wife of Albert W. Stokes. This latter deed was not filed for record until September 27, 1929, the day following the institution of this suit. These circumstances, along with the others, are adverted to as bearing upon the issue of alleged fraud in said defendants' representations concerning value and fair price of the lands.

Further, Stokes and Ball went before the agents of the plaintiffs, and Stokes there stated to said agents that $4,500 was a fair price and the best price obtainable. There is testimony that the agents requested Ball to raise the price to $5,000, and the latter stated he "could not raise his own bid." It further indicates that at one time he discussed with Stokes the advisability of raising the offer to $5,000, and that Stokes replied "it was no use, that they would accept that": that Stokes stated, as a reason why they would accept that, "that they needed the money * * * we would not have to raise the offer."

This comprehends the negotiations practically down to the point at which is injected into the case the question under consideration. The plaintiffs, joined by the defendant Albert W. Stokes, finally agreed to sell the land for the stipulated price, and deeded the same to Ball. He paid the $4,500 therefor; the same being secretly furnished to him by Stokes, or his wife, through him. Promptly upon the payment of the consideration, said defendant Stokes took therefrom his 21¼ per cent. thereof, and he and Ball went immediately to Breckenridge, and there the service of an attorney was obtained and a deed prepared and executed, conveying the land from Ball to Cora Ford Stokes, the wife of Albert W. Stokes, who directed the deed to be so made. Up to that time her name had not been brought into the deal.

While the deed was thus being prepared, the said Stokes and Ball engaged in a conversation which was sought to be introduced on the trial of this cause. It was excluded, and that ruling of the court is the basis of the assignment now under consideration, and which controls the disposition of the appeal. That conversation originated with the statement by Ball to Stokes that he (Stokes) was a trading man, and that he (Ball) would give him a nice profit for the land and leave the deed in his name. Whereupon it is testified that said Stokes inquired what Ball considered a nice profit, and that the latter stated he would double his money. The conversation then proceeding embraces the excluded testimony, and is, as stated in the bill, as follows: "The said Ball proposed to said Albert W. Stokes that if he would let him, the said Ball, keep the land, he would pay him $9,000.00 for the same; that said Stokes said in reply that $9,000.00 was not enough; that said Ball then proposed that he would pay him $9,500.00 and that said Stokes said that that sum was not enough; that said Ball then proposed he would pay him $10,000.00, which was $5,500.00 more than Ball had paid for said land for said Stokes from the Stokes

estate, and that the said Albert W. Stokes replied that he wouldn't sell it, as it was worth more money than that."

The appellant was offering this testimony to prove, or as tending to prove, the "fraudulent transaction itself." The court excluded the same, and there is before us the single question; namely, Did the court err in so ruling?

■ Did the excluded testimony have a material bearing upon the issue of fraud involved in the alleged misrepresentation by Stokes of the value of the land; such misrepresentation being accompanied by an artifice employed for the purpose of throwing the plaintiffs and their agents off guard and possibly causing them not to rely solely on independent judgment and investigation in such matter? We believe the question should be answered in the affirmative, and are of opinion that the court erred in excluding the same.

■■ Ordinarily, misrepresentations as to value do not constitute fraud, because they are generally to be regarded as mere expressions of opinion, or "trader's talk," involving matters of judgment and estimation as to which men may differ. But there is a well-recognized exception, in that misrepresentations of value may, under certain circumstances, be treated as actionable misrepresentations of fact, as where such misrepresentations are coupled with concealment of material facts, or with artifice or misrepresentations used to prevent the hearer from learning the truth. Hull v. Doheny, 161 Wis. 27, 152 N. W. 417; Garr v. Alden, 139 Mich. 440, 102 N. W. 950; Batchelder v. Stephenson et al., 150 Minn. 215, 184 N. W. 852; Samp v. Long, 50 S. D. 492, 210 N. W. 733; Adams v. Collins, 196 Mass. 422, 82 N. E. 498; Stack v. Nolte et al., 29 Wash. 188, 69 P. 753; First National Bank of St. Paul v. Blocker, 150 Minn. 337, 185 N. W. 292; 26 C. J. p. 1215, § 110 (1218); Black on Rescission, vol. 1, p. 156, § 67.

The above cases are not in their facts altogether like the instant one, but they call for the application of like principles of law and rules of equity, as do the facts detailed in this opinion. They are therefore cited as supporting in principle the conclusions we herein announce.

■ Under the peculiar facts of this case, there is another rule or principle which has a special bearing upon the question before us, in that it relates to the question of fraud as predicated upon a matter of opinion. Of course, the general rule is that fraud cannot be predicated upon the expression of a mere opinion, however inaccurate or erroneous it may be, but this general rule is subject to several important exceptions which are discussed at length in Black on Rescission, vol. 1. p. 197, §§ 80–84. In section 80, after setting out that such general rule has no application if the person making the statement as to value occupies a confidential or fiduciary relation to the other, and in other cases unnecessary to state here, the author uses this language: "Again, we have shown above that the fraudulent expression of a false opinion may be actionable fraud, and this applies where the opinion concerns a question of value. That is, if a statement as to value is made by one who knows it to be false or not consonant with the facts, and which is not his real opinion or judgment, and is asserted for the fraudulent purpose of deceiving the other party and inducing him to contract, and which accomplishes that purpose, it is to be treated as a fraudulent misrepresentation."

The authorities generally recognize this rule and some of them are here cited: Houston v. Darnell Lbr. Co. (Tex. Civ. App.) 146 S. W. 1061, 1063; Hoyt et al. v. First Nat. Bank of Chester (Tex. Civ. App.) 247 S. W. 637; O'Brien v. Von Lienen (Tex. Civ. App.) 149 S. W. 723; Newton v. Ganss, 7 Tex. Civ. App. 90, 26 S. W. 81; Olston v. Oregon, etc., Co., 52 Or. 343, 96 P..1095, 97 P. 538, 20 L. R. A. (N. S.) 915, 926; Mudsill Mining Co. v. Watrous (C. C. A.) 61 F. 163; Hetland v. Bilstad, 140 Iowa, 411, 118 N. W. 422; Notes to 35 L. R. A. 425–427.

If the foregoing rules are the correct principles to be applied to the facts of this case, we think there can be no question about the materiality of the testimony which we have been considering. Further, in making this disposition of the appeal, we do so with the conviction that the plaintiffs and their agents did not consummate the deal in full reliance upon their own judgment as to the market value of the land or the best obtainable price therefor. The state of the testimony is not conclusive in that respect, although, in the absence of the question under consideration, involving the exclusion of testimony, and in the absence of findings of fact and conclusions of law, this court would doubtless deem the testimony sufficient to warrant an affirmance of the judgment upon the theory that plaintiffs did rely upon their own judgment and investigation.

This is said because there is some testimony that the plaintiffs were inclined to make their own investigation of price and values, and that they were also disinclined to rely upon the representations of Albert W. Stokes. In this situation said Stokes might have remained silent, but, instead of doing so, he voluntarily injected himself into the negotiations, making the statements and representations hereinbefore set out, and used in connection with said artifice.

The judgment below in response to the cross-action of Cora Ford Stokes canceled all claims of the plaintiffs to the real estate, and removed such claims as a cloud from

her title. Originally, this suit contemplated a rescission, but that theory was abandoned, and it was prosecuted for damages alone. The judgment in her favor removing such cloud from title will be affirmed. In all other respects the judgment will, for the reasons assigned, be reversed and remanded for another trial. It is so ordered.