## KENDALL v. EARL et al.

### No. 18,392; May 4, 1896.

#### 44 Pac. 791.

**Agency—Ratification — Neglect to Disavow Agent's Acts.—** Plaintiff consigned goods to defendants, with instructions not to sell below a certain price without first advising him. Defendants sold at a price lower than that named and without consulting plaintiff, but notified him immediately after the sale. Plaintiff was absent from home when defendants' letter arrived, but, after his return, made no objection to the sale, until several months had elapsed. Held, that plaintiff's failure to disavow defendants' acts immediately on the learning of the facts of the sale was a ratification precluding recovery of damages therefor.[1]

[1] Cited and followed in Allen v. McAllister, 39 Wash. 446, 81 Pac. 929, holding in effect that if a factor is negligent or sells contrary to instructions, his act must be regarded as ratified unless dissatisfaction is expressed within a reasonable time.

APPEAL from Superior Court, Sacramento County; Matt F. Johnson, Judge.

Action by William S. Kendall against Joseph Earl and others to recover damages for breach of contract. There was judgment for defendants and plaintiff appealed. Affirmed.

Johnson, Johnson & Johnson and A. M. Johnson for appellant; C. H. Oatman for respondents.

HAYNES, C.—Plaintiff resides at Sacramento, and grows fruit in that county. The defendants are commission merchants doing business at Chicago, Illinois. On October 9, 1889, plaintiff shipped to defendants 22,758 pounds of dried French prunes, and 3,937 pounds of soft-shell almonds, under the terms stated in the following contract:

"Sacramento, Cal., October 9, 1889.

"Earl Bros. Co., Chicago, Illinois.

"Gentlemen: I shipped you per S. P. and U. P. R. R., in C. P. car 1282, 22,980 lbs. dried French prunes, and 4,000 lbs. of soft-shell almonds, to be sold by you on commission, at 4 per cent. to you. On said consignment I have received an advance, per check of George Dietrich, of $1,200.00, on which advance you are to charge me interest, after thirty days, at 7 per cent. per annum. This consignment you are not to sell, unless at the following prices: For the prunes, 9 cts.; for the almonds, 14½ cts. per pound,—without advising me of the offers made for these goods at figures below those named, and I instruct you to accept a less sum than the figures named above, after receiving such advice from you.

"W. S. KENDALL.

"This is correct, and we agree thereto.

"MILTON BROWN."

Milton Brown was an agent of defendants, and no question is made to the validity of the contract. In November, 1889, the defendants sold the prunes for six and one-half cents per pound, and the almonds at eleven cents, without communicating with the plaintiff, making a difference against the plaintiff of $678.47, to recover which sum plaintiff brought this suit. A jury trial was waived, and the court made the following finding: "That all the facts alleged in the complaint are true, but that, after the sales by the defendants

of the prunes and almonds as alleged in the complaint, the plaintiff ratified, approved and confirmed the acts of the defendants in making such sales.'' Judgment was entered for the defendants, and this appeal is from an order denying plaintiff's motion for a new trial, and the only question is whether the evidence is sufficient to justify the finding that plaintiff ratified the sale made by defendants. There is no appeal from the judgment.

The sale of the almonds, with the price at which they were sold, was reported by the defendants to the plaintiff by letter dated at Chicago, November 15, 1889; and the sale of the prunes was in like manner reported, under date of November 25, 1889. The almonds were sold November 14th, and the prunes November 21st, and the prices at which they were sold were the market prices at the dates of sale. The evidence tended to show that from the time these sales were made the market remained about the same, or at least with slight fluctuations, until in March, when there was a slight improvement; but as to whether, in that month, the prices named in the contract could have been realized, the evidence was materially conflicting. Several other shipments were made by plaintiff to defendants of prunes and other fruits, and almonds, upon which defendants also made advancements. As before stated, defendants informed plaintiff of the sale of the almonds by letter dated November 15th, and of the sale of the prunes by letter dated November 25th. On November 28th the receipt of both of said letters was acknowledged by plaintiff's clerk, in which defendants were informed that Mr. Kendall was out of town, and would reply more fully in person, when press of business would allow, as no one else understood it. The plaintiff testified that at the time these letters were received he was at Los Angeles, ''and was gone a good while''; that he did not remember what time he came back; that he was in Pasadena on Christmas day, and returned some time between that and January 2, 1890, and on that day wrote the defendants, without any mention of the defendants' letters received in his absence, as follows:

''If you can dispose of my prunes held by you at 7½ cts. per pound, or over, please do so. Your markets seem to range a trifle higher, but I had rather let them go. So, if

you can do so at the figures named, close out the entire lot, and make returns at once, and oblige

"Yours,

"W. S. KENDALL."

On March 8th defendants sent plaintiff an account of sales, and a check for $1,856.69, and on March 17th plaintiff replied thereto; and in that letter he made the first reference to the sale of the prunes and almonds mentioned in the contract of October 9th, and made an account of the loss thereon, amounting to $706.74, and demanded payment thereof. Concerning his delay in protesting against the sales in violation of the contract under which the said prunes and almonds were shipped,·the plaintiff testified that, when he returned and learned of defendants' letters of November 15th and 25th, he saw Mr. Brown, and asked him how the defendants came to sell the goods in violation of the contract, and told him he thought it was not right; that Brown said he could not understand it, and he did not think it was right, and that he "would notify the defendants of the matter—would communicate with them about it." He further testified that he had at that time six or seven thousand dollars' worth of his goods in defendants' hands, "and was not in a position to raise a row about it." On the part of the defendants, the evidence was to the effect that the goods in question were sold, at the time they were sold, by an oversight, in not noting upon the books that they were to be held. Mr. Earl, one of the defendants, and who testified that he was more familiar with the facts than any of the other members of the firm, testified that he had no recollection of receiving, through Mr. Brown, any notice that plaintiff objected to the sale, or that he would hold defendants responsible. It does not appear that Mr. Brown had any other connection with the defendants than an agency to solicit consignments, nor is there any evidence tending to show that he did communicate to defendants the fact of plaintiff's dissatisfaction, other than the following reference in defendants' letter of March 27, 1890, in reply to plaintiff's demand for the payment of said difference, viz.: "At the time the almonds were sold, our Mr. Brown saw you in Sacramento, and, we believe, showed you the letter he had received from us, and you did not say anything to him then, only that you did not think we ought to have sold them; but otherwise you made no claim at all, and we thought you were

reasonably well satisfied, or you would have said more to Mr. Brown about it at the time."

In applying the principle of ratification to the unauthorized acts of an agent, a distinction is made between those cases where third persons may be injured by the delay of the principal to disavow the unauthorized act, and those cases where only the principal and agent are affected by the transaction. Where innocent third persons are, or may be, injured, reasonable promptness in repudiating the transaction, after full knowledge of the facts, is more imperative; and the same rule applies where the principal, with like knowledge, receives a direct benefit from the unauthorized act of his agent. So, too, the character of the transaction—whether it be of a mercantile character, or an isolated transaction, not affected by the usages of trade—has been considered, in determining what is a "reasonable time" within which the transaction must be disavowed. Story, in his work on Agency (section 258), says: "In respect to silence, whether it operates as presumptive proof of ratification may essentially depend upon the particular relations between the parties, and the habits of business and the usages of trade. In the ordinary course of business between merchants and their correspondents, it is understood to be the duty of the one party receiving a letter from the other to answer the same within a reasonable time; and, if he does not, it is presumed that he admits the propriety of the acts of his correspondent, and confirms and adopts them. This presumption seems now, in favor of commerce, to be universally acted upon. And, therefore, if the principal, having received information, by a letter from his agent, of his acts touching the business of his principal, does not, within a reasonable time, express his dissent to his agent, he is deemed to approve his acts, and his silence amounts to a ratification of them. Nor is this principle peculiar to our jurisprudence. It has received the sanction of the Roman law, and has also been fully recognized by modern commercial jurists on the continent of Europe." To the same effect, see Wharton on Agency, sec. 86. In Ralphs v. Hensler, 97 Cal. 303, 32 Pac. 243, quoting from Ward v. Williams, 26 Ill. 447, 79 Am. Dec. 385, the court said: "In general, where an agent is authorized to do an act, and he transcends his authority, it is the duty of the principal to repudiate the act as soon as he is fully informed of what has been thus

done in his name; . . . . else he will be bound by the act, as having ratified it by implication": See, also, Searing v. Butler, 69 Ill. 575; Prince v. Clark, 1 Barn. & C. 186, 8 E. C. L. 80, and Gold Min. Co. v. National Bank, 96 U. S. 640, 644, 24 L. Ed. 648. Appellant cites sections 964 and 965 of Pomeroy's Equity Jurisprudence. The learned author there treats, in the first of these sections, of express confirmation or ratification, and, in the latter, of "acquiescence and lapse of time"; but he is treating the subject very broadly, and in relation to equitable actions of a widely different character, as shown by the two California citations in note 1, page 1404, viz., Borland v. Thornton, 12 Cal. 440, and Phelps v. Peabody, 7 Cal. 50, both of which were actions to enjoin the collection of judgments. Nevertheless, the principles laid down in the latter section, on page 1404, in no wise conflict with the authorities above cited. Appellant also cites Whittemore v. Hamilton, 51 Conn. 153, in which the court, referring to the section we have cited from Story on Agency, say: "But we think it must be understood that the principle was intended to apply only to those cases where the alleged principal receives a direct benefit from the act of the alleged agent, or where the latter appears to have been prejudiced by the neglect of the former to give him notice of dissent." The case there was very different, and did not involve the relations or principles involved in this case. There, Hamilton released a mortgage owned by Whittemore (and which was assigned to Hamilton as collateral security), to enable the mortgagor to complete a building upon the mortgaged premises, Hamilton relying upon his verbal promise to execute a new mortgage for the same amount as soon as the building should be completed. The mortgagor failed, and the promised mortgage was never executed. The court, immediately following the passage above quoted from the opinion, stated the true ground of the decision as follows: "If one holding property pledged to secure a debt should destroy it, or convert it to his own use, or give it away to another, whereby it becomes lost to the owner, does he ratify the act by mere neglect to give notice to the wrongdoer of his dissent? As well might the principle be applied to a trespass or any other tort."

It is also urged by appellant that defendants did not render an account of sales until March 8th, and that he made his formal claim for the deficiency on the 17th. He was, however,

notified of the sales, and the prices received, in November, and must have known that he was credited with the proceeds. He had received an advance of $1,200 upon the prunes and almonds in question, upon which he was to be charged interest, after thirty days, at seven per centum per annum, and upon another shipment, made November 7th, he had received an advancement of $3,000. Whether the plaintiff received any other payments prior to March does not appear, but he must have known that defendants would retain at least the $1,200 advanced, and thereby interest would be stopped thereon, and this fact furnishes an additional reason why he should have promptly disavowed the sale. The reason given by plaintiff for not expressing dissent earlier, viz., that he had $6,000 or $7,000 worth of his goods in their hands, and that he was in no position to make complaint, is not sufficient to excuse the delay, but is suggestive of a purpose or intention to delay the expression of any disavowal of the unauthorized sales. The order denying a new trial should be affirmed.

We concur: Vanclief, C.; Searls, C.

PER CURIAM.—For the reasons given in the foregoing opinion the order appealed from is affirmed.