(No. 5401. Decided August 2, 1905.)

HENRY F. ALLEN, *Appellant,* v. CHARLES McALLISTER, *Respondent.*[1]

FACTORS—PRINCIPAL AND AGENT—AGENT SELLING ON COMMISSION— NOTE FOR ADVANCES—DEFENSES—NEGLIGENCE IN CARE OF GOODS— FAILURE TO SELL AS INSTRUCTED—RATIFICATION—SETTLEMENT WITHOUT DISAPPROVING ACTS—WAIVER OF CLAIM. In an action upon a promissory note, given for the amount of advances made by the plaintiff, a factor, to whom wool had been consigned by the defendant for sale on commissions, the defendant cannot set up as a defense and counterclaim the negligence of the factor in caring for the wool and the failure to sell according to instructions, where it appears that the wool had been shipped and the advances made more than a year prior to the execution of the note, and any neglect of the plaintiff was prior to that time, that the defendant then called on the plaintiff, examined the wool, made no complaint and gave orders that it be further held, and gave his note on the plaintiff's statement of the amount then due, and then waited a year longer before making any claim; since he ratified the acts of the factor by failing to disapprove of the same within a reasonable time; and in the absence of evidence of failure of duty after the execution of the note, a verdict should have been directed for the plaintiff.

Appeal from a judgment of the superior court for Yakima county, Rudkin, J., entered April 17, 1903, upon the verdict of a jury rendered in favor of the defendant, upon a counterclaim, in an action upon a promissory note. Reversed.

*Carr & Preston* and *Whitson & Parker,* for appellant.

*H. J. Snively,* for respondent.

MOUNT, C. J.—This action was brought by the appellant to recover a balance of $1,689.09, alleged to be due upon a promissory note for $3,556.50. The amended answer of respondent admitted the execution and delivery of the note, but alleged that it was made without consideration and for the accommodation of the appellant, under circumstances substantially as follows: That appellant and respondent, long prior to the execution of the note, had entered into an

1 Reported in 81 Pac. 927.

agreement whereby appellant engaged to sell a certain lot of wool for the respondent, on commission; that in pursuance of such agreement, appellant advanced on said wool to respondent an amount of money represented by the face of the note; that the wool was delivered by respondent to appellant, and, at the time of the agreement, there was no understanding that the note was to be executed, and that subsequently the note was executed without any new agreement and without consideration.

As a further defense the answer alleged, that about August or September, 1898, the respondent entrusted to appellant a large amount of wool, to be sold by appellant upon commission at San Francisco, California, upon representations made by appellant to respondent that appellant was engaged in selling wool on commission in said city, and that he was a competent and skillful commission merchant and wool factor; that appellant received said wool and undertook to sell it upon commission; that appellant failed to take proper care of said wool and permitted it, through neglect and lack of proper care, to become deteriorated in value; that he failed to use ordinary care and skill in keeping said wool in proper condition for sale, and failed to use ordinary care, skill, and diligence in the sale thereof; that he failed to use ordinary care in carrying out certain instructions and requests made by respondent for the sale of said wool; that he carelessly and negligently held said wool, accumulating heavy charges of interest, taxes, storage, etc., and that if appellant had used diligence he would have received $6,000 therefor, which would have left a balance of $1,511.70 over and above the amount appellant had advanced on said wool. Respondent prayed for damages for that amount.

The reply admitted the receipt of the wool for sale upon commission, and that, at the time the wool was delivered to appellant, there was no agreement for a note for advances made, and denied the allegations of negligence and want of care in keeping and disposing of said wool. The reply fur-

ther pleaded affirmatively, that shortly prior to the execution of the note sued on, a full and complete settlement was had in respect to all transactions and dealings prior to the date of the note, and that, as a result thereof, it was ascertained that respondent was then indebted to appellant in the sum of $3,456.50, and that respondent then and there agreed with appellant that, if appellant would advance to respondent an additional $100, respondent would then execute and deliver a promissory note for the full amount of of said indebtedness, plus the said sum of $100; that thereupon appellant advanced to respondent the sum of $100, and respondent executed and delivered to appellant the note sued upon; that the said note was executed with full knowledge of all the matters set out in the affirmative answer. The cause was tried to the court and a jury, and a verdict was rendered in favor of respondent for $313.14, upon which a judgment was entered. The appeal is from this judgment.

The facts are substantially as follows: The appellant is a commission merchant, residing in San Francisco, California. The respondent is a wool grower, residing at North Yakima, this state. On or about June 1, 1898, the respondent shipped from North Yakima, to appellant at San Francisco, about 40,000 pounds of wool, for sale in the usual course upon commissions. When the wool was received by appellant, he advanced to respondent $3,000, and paid the freight and other charges to San Francisco, in addition to said advance. Nothing appears to have been done with the wool for more than a year, when on September 7, 1899, respondent wrote to appellant a letter, as follows:

"Dear Sir:—As I have not heard from you for some time and I see wool is climbing up a little in price, I wish to know what is the best price you can get for the wool I shipped you over one year ago. I have about 50,000 pounds of wool stored here waiting for a good market, but as I will require money to buy hay early this fall, I am investigating the best market to dispose of same. The clip is about the

same as last year's, a little cleaner. I had a few reports from the East, but hope the Frisco market is still better. Trusting to hear from you soon, I remain, yours truly, Chas. McAllister."

Appellant replied on September 14, 1899, and said:

"If I were to force your wool for sale today it would bring 10¾ to 11 cents on a basis of 74 per cent shrinkage. But you must remember your wool is a good staple wool, and will sell for staple wool. . . . I therefore do not feel inclined to push the sale of your wool at present as I feel I can do much better with it. . . . I can probably make a sale of your wool now on hand at a price to yield you sufficient means for hay."

On November 10, 1899, respondent wrote to appellant as follows:

"As I have had no reports from you for some time concerning the wool, I am getting anxious, as I expected you would have mine sold by this time, as I see the market has advanced a little you better sell my clip at your earliest convenience, as the payments for winter hay is coming on soon and we need money. I still have my other clip on hand, and may ship to you after the sale of the clip you have already got. Hoping to hear from you soon, I remain, yours truly, Chas. McAllister."

On November 13, 1899, appellant answered this letter as follows:

"I have been expecting daily to sell your wool, and have every reason to think I will be successful in making the sale within the next few days, when I will advise you at once. I think you can safely rely upon my being able to sell within the next ten days or two weeks. The market as you say is somewhat better than it has been for some time past. There is now an increased demand, and a slight advance in price. You can rest assured that I will obtain the best price possible."

On January 8, 1900, respondent wrote as follows:

"As I have not heard from you for a long time, and as I instructed you to sell my clip of wool in your hands in my

last letter, as I was in need of money, I am wondering what is the reason of delay, as I see wool is a fine price in the East, but as I have confidence in your judgment in handling wools in the best market, I am wondering if you still expect much advance in price within the next month or so. Please let me hear from you, and oblige."

On January 17, 1900, the appellant replied to the last letter above, as follows:

"Your favor of January 8th received and has my careful attention. I have held your wool because I thought I could do better with it. I am negotiating with a party in regard to your wool, and hope within a few days to be able to render you satisfactory returns. The London market opens at same price as closing quotations of last sale, which were high, and unless the wool market in the East tightens up, we may expect a continuance of good prices for wool. At present, of course, things are quiet in the East, as they always are at this time of the year; but woolen goods are selling in large quantities at an advance price; and hence everything is in favor of obtaining satisfactory prices for wool."

On April 12, 1900, the appellant wrote to respondent, saying:

"I regret exceedingly that it has been so long, but in holding I have acted as I thought was for your interest. I will dispose of the wool just as soon as I can obtain what I consider its value."

On June 18, 1900, appellant wrote to respondent as follows:

"The wool market remains dull and quiet both east and west, and there has been very little wool sold since the first of last January. . . . I do not look for any change in the situation until the end of July or August."

In September of 1900, after the time of the foregoing correspondence, the respondent went to San Francisco to see about his wool. While there he called upon the appellant, and they talked over the condition of the wool market, and respondent examined his wool and concluded to have it

scoured, and appellant agreed to advance the money therefor, which was afterwards done. Respondent, at the time of this conversation, directed the appellant to hold the wool until the month of February, 1901. At this same time a statement was rendered to respondent by appellant, showing the amount of advances that had been made up to that time. Respondent then secured an additional advance of $100, which was added to the balance due. The interest was reduced from seven to six per cent, and the respondent thereupon executed and delivered the note sued upon. At that time respondent was told that a small part of the wool had been sold. Respondent testified upon the trial that he was not satisfied with appellant's explanation, but that wool was a little low at the time he was down, or he would have attempted to sell the wool himeslf; that he was not in a position to redeem the wool just at that time, so the best thing to do was to have the wool scoured and leave it in appellant's hands. The balance of the wool was afterwards sold at short intervals up to June 5, 1902, and the net proceeds amounted to $2,593.27, leaving respondent indebted on the note at that time in the sum of $1,300.18.

There is no evidence in the record before us that appellant was negligent in the care of the wool, or in the sale thereof, after the time the note was given in September, 1900, or that appellant after that time failed, neglected, or refused in any manner to comply with the request of the respondent to sell the wool. If appellant was negligent at all in the discharge of any duty which he owed to the respondent, such negligence occurred prior to the execution of the note sued upon, and respondent was fully aware thereof at the time the note was given. At the close of respondent's evidence, the appellant moved the court for a directed verdict, upon the ground that there was no evidence of any failure of duty on the part of the appellant subsequent to the execution of the note sued on, and that respondent, by the execution of the note, is estopped to claim damages prior to that time.

This motion was denied, and the ruling of the court thereon is the first error assigned.

Respondent has not appeared in this court. He has filed no brief, and no argument has been made in his behalf. We are of the opinion, upon the record as presented, that the trial court erred in refusing the motion for a directed verdict. It is true, as stated by the lower court when ruling upon the motion, that no claim for damages was made or discussed at the time the note was given on September 17, 1900. It is also true that the damages claimed in this action had accrued prior to that time, and if respondent had actually been damaged by any act or negligence of the appellant, he was then fully informed and aware of it and should have called the attention of appellant thereto. The fact that he did not do so seems to be conclusive of the fact that he did not then consider that appellant had violated any duty he owed to respondent; or if respondent did then think that appellant had theretofore been negligent in the care of the wool or in the sale thereof, his failure to express disapproval must now be held to amount to a waiver of it, and a ratification of the acts of the appellant.

If the letters of the respondent can be held to amount to an instruction to sell the wool, and if the failure of the appellant to sell it as instructed can be held to be a departure from these instructions, such departure must be held to be ratified because the principal expressed no disapproval within a reasonable time. 12 Am. & Eng. Ency. Law (2d ed), 653; *Kendall v. Earl* (Cal.), 44 Pac. 791; *Searing v. Butler,* 69 Ill. 575; *Patrick v. Pote,* 117 Mass. 297; *Meyer, Weiss & Co. v. Morgan,* 51 Miss. 21, 24 Am. Rep. 617; *Austin v. Ricker,* 61 N. H. 97; *Woodward v. Suydam and Blydenburg,* 11 Ohio 361.

The respondent at the time the note was given should have expressly disapproved the failure to sell the wool, and stood upon such disapproval. Instead of so doing, he impliedly ratified the previous acts of his agent by agreeing to the

account and giving his note therefor. He then waited more than a year and until it was discovered that the wool would not sell for enough to pay the note. He then, for the first time, asserted that the failure to sell prior to the making of the note was the cause of loss to him. Under these circumstances, it was the duty of the court to direct a verdict for the balance due on the note, viz., $1,300.18, with interest at six per cent per annum since June 5, 1902.

The judgment is therefore reversed, and the cause remanded for a judgment in favor of appellant in accordance with this opinion.

FULLERTON, HADLEY, and DUNBAR, JJ., concur.

RUDKIN, ROOT, and CROW, JJ., took no part.