[No. 5807.  Decided January 30, 1906.]

MARTHA K. ERICKSON, *Respondent,* v. E. J. McNEELEY & COMPANY, *Appellant.*[1]

| 41  509 |
| 42  234 |

MASTER AND SERVANT—NEGLIGENCE—ASSUMPTION OF RISK—UNGUARDED SAW. Under the provisions of the factory act, an employee does not assume the risk of injury from an unguarded saw, if it could have been properly guarded, in which case the master is guilty of negligence as a matter of law.

SAME—POSSIBILITY OF GUARDING SAW—QUESTION FOR JURY. It is for the jury to determine whether a saw could have been properly guarded where witnesses testified that a proper guard could have been placed over or at the side of the saw at slight expense without any inconvenience or detriment to the operation of the saw, although this was disputed by other witnesses.

SAME—WORKING WITH BACK TO SAW—CONTRIBUTORY NEGLIGENCE. A power bolter's helper whose duty it is to place shingle blocks on the saw carriage, is not guilty of contributory negligence as a matter of law, by reason of his turning his back to the saw, striking his hook into a block weighing 75 to 100 pounds, and pulling with sufficient force to pull out the hook and fall backward into the saw, where there was evidence to the effect that the working space was

[1]Reported in 84 Pac. 3.

filled up with blocks, that it was the customary way of placing blocks on the carriage, and necessary to have his back to the saw under the circumstances.

EVIDENCE—PROOF OF GUARDING SAW AFTER ACCIDENT—WHEN AD-MISSIBLE. Upon an issue as to whether a saw could have been advantageously guarded under the factory act, it is not error to admit evidence that after the accident it was guarded, where the evidence was offered only for the purpose of showing that the saw could have been guarded, and the jury were instructed to consider it only for that purpose.

MASTER AND SERVANT—INJURY FROM UNGUARDED SAW—DEFENSES—INDEPENDENT CONTRACTOR—EVIDENCE—QUESTION OF FACT. A corporation, the owner of a shingle mill, cannot avoid responsibility for inuries to employees by showing that the mill had been leased to an independent contractor who was in full charge and control at the time of the accident, where it appears that the lessor was one of the stockholders of the owner, and had previously been the general manager of the mill, that no announcement of the lease was made, except privately to one or two employees, and the change was not indicated in any way, that the employees generally did not know of the change and received their pay in checks of the corporation, and the lessor had stated that he could not settle the claim without authority from the company.

COMPROMISE AND SETTLEMENT — ATTORNEY AND CLIENT—LIMITATION OF AUTHORITY—NOTICE—QUESTION FOR JURY. It is for the jury to determine whether a claim for a death loss has been compromised by the payment of $500 to an attorney for the widow of the deceased, when, according to strong evidence, the defendant was informed that the attorney's authority was limited to the acceptance of $5,000 to be paid in the presence of the widow, and the widow repudiated the settlement soon after learning of it, and returned the check for the money which she received from the attorney.

ROOT, J., dissents.

Appeal from a judgment of the superior court for Snohomish county, Black, J., entered April 29, 1905, upon the verdict of a jury rendered in favor of the plaintiff for damages for the death of an employee, a power bolter's helper, falling upon a unguarded saw. Affirmed.

*Reynolds & Griggs* and *Bell & Austin,* for appellant. The plaintiff assumed the risk. *Week v. Fremont Mill Co.,* 3 Wash. 629, 29 Pac. 215; *Hogele v. Wilson,* 5 Wash. 160, 31 Pac. 469; *Jennings v. Tacoma R. etc. Co.,* 7 Wash. 275,

34 Pac. 937; *Schultz v. Johnson,* 7 Wash. 403, 35 Pac. 130; *Olson v. McMurray Cedar Lum. Co.,* 9 Wash. 500, 37 Pac. 679; *Bullivant v. Spokane,* 14 Wash. 577, 45 Pac. 42; *Hoffman v. American Foundry Co.,* 18 Wash. 287, 51 Pac. 385; *Anderson v. Inland Tel. etc. Co.,* 19 Wash. 575, 53 Pac. 657, 41 L. R. A. 410; *Johnson v. Tacoma Mill Co.,* 22 Wash. 88, 60 Pac. 53; *Brown v. Tabor Mill Co.,* 22 Wash. 317, 60 Pac. 1126; *French v. First Avenue R. Co.,* 24 Wash. 83, 63 Pac. 1108; *Robare v. Seattle Traction Co.,* 24 Wash. 577, 64 Pac. 784; *Krickeberg v. St. Paul Lum. Co.,* 37 Wash. 63, 79 Pac. 492; *Steeples v. Panel etc. Box Co.,* 33 Wash. 359, 74 Pac. 475; *Bier v. Hosford,* 35 Wash. 544, 77 Pac. 867; *Beltz v. American Mill Co.,* 37 Wash. 399, 79 Pac. 981. The plaintiff was guilty of contributory negligence. *Lewis v. Simpson,* 3 Wash. 641, 29 Pac. 207; *Richardson v. Carbon Hill Coal Co.,* 6 Wash. 52, 32 Pac. 1012, 20 L. R. A. 338; *Cooney v. Great Northern R. Co.,* 9 Wash. 292, 37 Pac. 438; *Day v. Cleveland etc. R. Co.,* 137 Ind. 206, 36 N. E. 854; *Reynolds v. Northern Pac. R. Co.,* 22 Wash. 165, 60 Pac. 120; *Danuser v. Seller & Co.,* 24 Wash. 565, 64 Pac. 783; *Robare v. Seattle Traction Co.,* 24 Wash. 577, 64 Pac. 784; *Green v. Western American Co.,* 30 Wash. 87, 70 Pac. 310; *Johnson v. Anderson etc. Lum. Co.,* 31 Wash. 554, 72 Pac. 107. There were two ways of doing the work, one safe and the other dangerous. *Watts v. Hart,* 7 Wash. 178, 34 Pac. 423, 771; *Malmstrom v. Northern Pac. R. Co.,* 20 Wash. 195, 55 Pac. 38; *Jennings v. Tacoma R. etc. Co., Hoffman v. American Foundry Co., Reynolds v. Northern Pac. R. Co., Beltz v. American Mill Co.* and *Johnson v. Anderson etc. Lum. Co., supra.* It was error to admit evidence of experiments as to the placing of guards after the accident. *Bell v. Washington Cedar Shingle Co.,* 8 Wash. 27, 35 Pac. 405; *Townsend v. Northern Pac. R. Co.,* 29 Wash. 185, 69 Pac. 750; *Carter v. Seattle,* 21 Wash. 585, 59 Pac. 500; *Stevens v. Boston Elev. R. Co.,* 184 Mass. 476, 69 N. E. 338; *Morse v. Minneapolis etc. R. Co.,* 30

Minn. 465, 16 N. W. 358.    Mr. Palmer was an independent
contractor, solely liable for the injury.    *Ziebell v. Eclipse
Lum. Co.,* 33 Wash. 591, 74 Pac. 680; *Connors v. Hen-
nessey,* 112 Mass. 96; *New Albany etc. Mill v. Cooper,* 131
Ind. 363, 30 N. E. 294; *Reier v. Detroit Steel etc. Works,*
109 Mich. 244, 67 N. W. 120; *King v. New York Cent. etc.
R. Co.,* 66 N. Y. 181, 23 Am. Rep. 37; *Casement v. Brown,*
148 U. S. 615, 13 Sup. Ct. 672, 37 L. Ed. 582; *Humpton
v. Unterkircher,* 97 Iowa 509, 66 N. W. 776.    The damages
were duly released.    *Pederson v. Seattle etc. R. Co.,* 6 Wash.
202, 33 Pac. 351, 34 Pac. 665; Bigelow, Fraud, 123; *Rose
v. West Philadelphia R. Co.* (Pa.), 12 Atl. 78.    The action
was brought at common law and not under the factory act.
*Ryalls v. Mechanics' Mills,* 150 Mass. 190, 22 N. E. 766, 5
L. R. A. 667; Dresser, Employer's Liability, pp. 14, 20, 23;
Buswell, Personal Injuries, § 228; *Coughlin v. Boston Tow-
Boat Co.,* 151 Mass. 92, 23 N. E. 721; *Clark v. Merchant's
etc. Transp. Co.,* 151 Mass. 352, 24 N. E. 49; *Dacey v. Old
Colony R. Co.,* 153 Mass. 112, 26 N. E. 437; *Clark v. New
York etc. R. Co.,* 160 Mass. 39, 35 N. E. 104; *Clare v. New
York etc. R. Co.,* 172 Mass. 211, 51 N. E. 1083; *Mobile
etc. R. Co. v. Holborn,* 84 Ala. 133, 4 South. 146; *Laughran
v. Brewer,* 113 Ala. 509, 21 South. 415; *Colorado Elevator
Co. v. Mitchell,* 26 Colo. 284, 58 Pac. 28; *Griffiths v. Earl
of Dudley,* 9 Q. B. D. 357; *Gibbs v. Great Western R. Co.,* 12
Q. B. D. 208; *Weblin v. Ballard* 17 Q. B. D. 122; *Lovell v.
De Bardelaben etc. Iron Co.,* 90 Ala. 13, 7 South. 756.    It
was error to instruct that there would be no contributory
negligence or assumption of risk if the saw was unguarded.
*Narramore v. Cleveland etc. R. Co.,* 96 Fed. 298, 48 L. R. A.
68; *Krause v. Morgan,* 53 Ohio St. 26, 40 N. E. 886; *Lake
Erie etc. R. Co. v. Craig,* 73 Fed. 642; *Pittsburg etc. Coal
Co. v. Estienvenard,* 40 N. E. 725; *Victor Coal Co. v. Muir,*
20 Colo. 320, 38 Pac. 378, 46 Am. St. 299; *Holum v. Chi-
cago etc. R. Co.,* 80 Wis. 299, 50 N. W. 99; *Grand v. Michi-
gan etc. R. Co.,* 83 Mich. 564, 47 N. W. 837, 11 L. R. A.

402; *Taylor v. Carew Mfg. Co.*, 143 Mass. 470, 10 N. E. 308. Contrary to the doctrine of the *Narramore* case, are the following: *St. Louis Cordage Co. v. Miller*, 126 Fed. 495; *White v. Wittemann Lith. Co.*, 131 N. Y. 631, 30 N. E. 236; *Langlois v. Dunn etc. Mills* (R. I.), 57 Atl. 910; *Martin v. Chicago etc. R. Co.*, 118 Iowa 148, 91 N. W. 1034, 96 Am. St. 371, 59 L. R. A. 698; *Swenson v. Osgood etc. Mfg. Co.*, 91 Minn. 509, 98 N. W. 645; *Anderson v. Nelson Lum. Co.*, 67 Minn. 79, 69 N. W. 630; *McGinty v. Waterman*, 93 Minn. 242, 101 N. W. 300; *Thompson v. Allis Co.*, 89 Wis. 523, 62 N. W. 527; *Helmke v. Thilmany*, 107 Wis. 216, 83 N. W. 360; *Dugan v. Chicago etc. R. Co.*, 85 Wis. 609, 55 N. W. 894; *Schneider v. Chicago etc. R. Co.*, 99 Wis. 378, 75 N. W. 169; *Higgins Carpet Co. v. O'Keefe*, 79 Fed. 900; *Glenmont Lumber Co. v. Roy*, 126 Fed. 524; *Grand v. Michigan Cent. R. Co.*, 83 Mich. 564, 47 N. W. 837, 11 L. R. A. 402; *Ford v. Chicago etc. R. Co.*, 106 Iowa 85, 75 N. W. 650; *Victor Coal Co. v. Muir*, 20 Colo. 320, 38 Pac. 378, 46 Am. St. 299, 26 L. R. A. 435; *Birmingham R. etc. Co. v. Allen*, 99 Ala. 359, 13 South. 8, 20 L. R. A. 457; *Knisley v. Pratt*, 148 N. Y. 372, 42 N. E. 986, 32 L. R. A. 367; *Cleveland etc. R. Co. v. Baker*, 91 Fed. 224; *O'Maley v. South Boston Gas Light Co.*, 158 Mass. 135, 32 N. E. 1119, 47 L. R. A. 161; *Browne v. Siegel, Cooper & Co.*, 191 Ill. 226, 60 N. E. 815; *Mulhern v. Lehigh Valley Coal Co.*, 161 Pa. St. 270, 28 Atl. 1087; *Williams v. Wagner Co.*, 110 Wis. 456, 86 N. W. 157; *McRickard v. Flint*, 114 N. Y. 222, 21 N. E. 153; *Keenan v. Edison Elec. etc. Co.*, 159 Mass. 379, 34 N. E. 366; *Goodridge v. Washington Mills Co.*, 160 Mass. 234, 35 N. E. 484; *Pierce v. Contrexville Mfg. Co.*, 25 R. I. 512, 56 Atl. 778; 3 Elliott, Railroads, § 1315, with notes; Dresser, Employers' Liability, §§ 82, 116; Bailey, Master's Liability, p. 280; Buswell, Personal Injuries, §§ 207, 209.

*Hathaway & Alston* and *E. W. Bundy*, for respondent.

33—41 WASH.

MOUNT, C. J.—The respondent, as the widow of W. A. Erickson, deceased, brought this action against the appellant to recover damages occasioned by the death of her husband in appellant's mill. The complaint in substance alleges, that the respondent is the widow of W. A. Erickson, deceased; that the appellant owned and operated a shingle mill in Everett, and that her said husband was employed by appellant in said mill; that his duties were to work near a circular saw forty-four inches in diameter; that while exercising due care her said husband slipped and fell into said saw, and was killed. The negligence alleged is that appellant neglected and failed to guard said saw, although the same could have been guarded advantageously, and that said appellant failed to furnish her husband with a safe place in which to work.

Appellant answered the complaint and alleged that it owned the mill, but denied that it was operating the said mill at the time of the death of Mr. Erickson, denied that it employed Mr. Erickson, or that he was working for appellant at the time of his death, and denied any neglect of duty. As a first affirmative defense, appellant alleged that, on January 1, 1904, some five months before the injury, it had leased the said mill to one J. R. Palmer, who at the time of the accident had full charge of the mill and machinery, and employed all the men, including the said W. A. Erickson, and was manufacturing shingles for the appellant at the rate of fifty-two cents per thousand on his own account; that appellant had nothing whatever to do with the mill, or the men in charge thereof, or employed therein. As a second affirmative defense the answer alleged that the saw in question was as thoroughly and advantageously guarded as it was possible for the same to be guarded and operated; that said W. A. Erickson was furnished a reasonably safe place in which to work; that the dangers thereof were open and apparent, and well known to said Erickson, and were the usual risks and dangers incident to his employment, and that he assumed the risks thereof. As a third affirmative defense the answer alleged

that the death of said W. A. Erickson was caused solely by a want of proper care and caution on his part, and was due solely to his contributory negligence. As a fourth affirmative defense the answer alleged a full and complete settlement and satisfaction of the cause of action stated in the complaint, by the payment of $500 by said J. R. Palmer, the lessee of the mill, to one George P. Rossman, an attorney for the respondent, said attorney having full power and authority from the respondent to make the settlement.

Respondent in reply denied all the allegations of the affirmative defenses, and in reply to the affirmative matter contained in the fourth affirmative answer, alleged that the said attorney Rossman had no authority to settle the claim for less than $5,000, and that said Palmer had notice thereof prior to the time of the alleged settlement; that immediately after she was notified of the settlement for $500, she repudiated the same, and returned the money which was sent to her. Upon these issues the cause was tried to the court and a jury, which returned a verdict in favor of the respondent for $5,000. The appeal is prosecuted from a judgment rendered upon the verdict.

There is no dispute as to how the accident happened which caused the death of W. A. Erickson, and there is no dispute as to the condition of the saw, or the mill in which the death occurred. The facts in relation to these matters are substantially as follows: The mill was owned by the appellant. It is located on the water front in Everett. To the west of the mill, logs were kept in a boom in the water. These logs were brought up out of the water through a log chute, and into the west side of the mill through an opening about twelve feet wide by eight feet high. About fifteen feet from this opening, and at right angles to the log chute, was a large drag saw operated by steam power, which saw was used to cut logs into blocks about sixteen inches long. These blocks when cut from the log dropped on to a deck about ten feet wide by twelve feet long, which was called a "sapping" deck.

In the southeast corner of this sapping deck, on a level and connected with it, was the power bolter's saw carriage. This carriage was about four feet wide by eight feet long, covered over the top with sheet iron. It was a movable platform with a slit running lengthwise down the center. Through this slit the saw revolved as the carriage moved back and forth along the saw. Immediately to the south of the center of this carriage and opposite the slit, was located a stationary circular saw fifty-two inches in diameter. This carriage and saw were used for the purpose of splitting round blocks into bolts, suitable for the shingle machines. Round blocks, one or more at a time, were taken from the sapping deck and placed upon the power bolter's carriage, over the slit therein, and then, by means of a lever, the carriage was caused to run forward into the saw which would cut the round blocks into the proper size. By reversing the lever the carriage would move back to its position in the southeast corner of the sapping deck. The blocks would then be removed from the carriage and more round blocks placed thereon. At the end of this carriage next to the saw, an iron frame extended across the carriage. At the place of the slit in which the saw revolved, this frame extended higher than the saw, forming a yoke or bow, which permitted the saw to pass through. This frame served to make the carriage solid at that end, and also as a guard to protect blocks from rolling into the saw prematurely. There was ample light in the mill about the sapping deck and power bolter's saw and carriage. The machinery was all in good order and repair.

W. A. Erickson, deceased, was employed as power bolter's helper in the mill. His duties were to take round blocks from the sapping deck and place them upon the power bolter's saw carriage. He used a short iron hook in turning, rolling, or lifting the blocks when necessary to place them upon the saw carriage. He had been engaged in this work for about eight or nine days previous to the day of the accident. On May 13, 1904, at about four o'clock in the afternoon, a round

cedar block was lying on its circumference with the axis of the block at right angles to the power bolter's carriage, and within a foot or so of the carriage, not far from the southeast corner of the sapping deck. It was within four or five feet of the saw, which was revolving from nine hundred to fourteen hundred revolutions per minute. The saw was unguarded, except for the iron inverted U-shaped frame at the end of the carriage next to the saw. The shingle block was a cedar block sixteen inches long, two or three feet in diameter, and weighing from seventy-five to one hundred pounds. The circumference of the block was covered with a thin bark.

Mr. Erickson came up to the block for the purpose of rolling or sliding it on to the power bolter's carriage. He stood with his back toward the saw, being between the block and the saw. He reached down with his hook, which he struck into the east end of the block, being the end nearest to him. The hook caught in the wood of the block just under the bark. He then pulled toward himself hard enough so that the wood and bark gave way, which caused him to lose his balance and fall backward upon the saw. His head was severed from his body. The other facts in the case necessary to an understanding of the points presented will be stated hereafter in connection therewith. At the conclusion of the respondent's testimony, and again at the conclusion of all the testimony in the case, the appellant moved the court for a directed verdict upon the grounds, that respondent's husband met his death by a risk which was open and apparent, and therefore assumed; that all the testimony showed that he was guilty of contributory negligence; that he was employed by J. R. Palmer, who was an independent contractor for whose negligence appellant was not liable, and that the cause of action had been settled and discharged.

It may be conceded in this case that, but for the provisions of the factory act of 1903, respondent's husband assumed the risk which caused his death. The mill was well lighted and all the machinery was in good order and repair. There were

no hidden or latent dangers or defects. The dangers were open and apparent. Whether the deceased assumed the risk, therefore, depends upon the fact whether the saw was guarded, or should have been properly guarded under the factory act. Laws 1903, page 40. If the saw could have been guarded advantageously and was not so guarded, appellant was negligent, assuming, of course, that it was in charge of the mill; and the deceased did not assume the risk under the rule in *Hall v. West & Slade Mill Co.,* 39 Wash. 447, 81 Pac. 915; *Whelan v. Washington Lumber Co.,* ante p. 153, 83 Pac. 98, and *Hoveland v. Hall Bros. Marine R. etc. Co.,* ante p. 164, 82 Pac. 1090.

The evidence conclusively shows that the saw in question was open and exposed. It was located at the southeast corner of the sapping deck, and was revolving at from nine hundred to fourteen hundred revolutions per minute. It extended about twenty-four inches above the level of the floor of the sapping deck. The saw was manifestly dangerous to those who were required to work around it or near it, as the deceased was required to do. His work required him to be within six or eight feet of the saw a large portion of the time. If this saw was properly guarded, then there was no negligence on the part of the appellant. If it was not properly guarded, then the company was negligent as a matter of law and the deceased did not assume the risk. *Hall v. West & Slade Mill Co., supra; Hansen v. Seattle Lumber Co.,* ante p. 349, 83 Pac. 102.

Appellant claimed that the iron yoke at the end of the carriage served as a guard, but there was evidence that this iron was no guard at all against dangers to employees; that its only purpose was to hold that end of the carriage solid, and to protect blocks. from coming in contact with the saw prematurely. A glance at the model of the mill, and the photographs contained in the record, convinces us that there is no merit in the claim that this was a proper guard against dangers of the saw, and that its only purpose was as stated

above. There was evidence that a proper guard could have been placed over, or by the side of, the saw at trifling expense, so that it would have been comparatively safe, and with no inconvenience or detriment to the operation of the saw. It is true, this evidence was disputed by some of the witnesses for the appellant. Under this state of the evidence the question of assumption of risk became a question for the jury. If the saw could have been guarded advantageously without material detriment to its usefulness, it became the duty of the operators of the mill to so guard it, so that employees might not be injured thereon. The neglect of duty in this respect was negligence of the company. If it could not have been guarded advantageously, then there was no duty to guard it and no negligence on the part of the company, and the deceased assumed the risk. There was sufficient evidence to take these questions to the jury in this case.

The many cases from this court cited by appellant in its brief upon the question of assumed risk were decided before the passage of the factory act which controls this case, and do not involve questions where there was a statutory duty to protect employees. The question of assumed risk was controlled in those cases by common law rules which we held, in *Hall v. West & Slade Mill Co., supra,* do not apply where there is a violation of statutory duty.

Appellant argues that the deceased was guilty of contributory negligence as a matter of law; that his negligence consisted in standing near the saw with his back toward it, in striking his hook into the east end or end of the block toward him, and in pulling against the block with sufficient force to fall backward when the hook pulled out of the block. These facts no doubt tend to show contributory negligence and, if these were the only facts shown, they might be sufficient for that purpose. But there is evidence to the effect that the sapping deck was filled up with blocks; as some of the witnesses stated, the deck was "swamped," so that it became necessary for the deceased to stand at the southeast corner

of the sapping deck nearest the saw in order to place the blocks on the power bolter's carriage, and that he could not do his work in any other place or in any other way. There was also evidence to the effect that the usual and customary way of sliding or rolling blocks on to the power bolter's carriage was to take the blocks as they came without reference to the way the face was turned, and that the hook was usually placed in the end of the block which was most convenient. It is true the witnesses did not agree upon these points. They were all disputed, and there was evidence that the deceased was told when he went to work that he must always work with his face to the saw. But in view of the evidence that the sapping deck was "swamped," or filled up with blocks, and that it was necessary for the deceased to have his back toward the saw at the time he was injured, and under the circumstances which appear to have surrounded him at that time, we think the question of contributory negligence was a question of fact for the jury and not a question of law for the court, because reasonable minds might well differ as to whether or not he was conducting himself under the circumstances as a reasonably prudent man would have done.

The question whether or not the saw could have been advantageously guarded was one of the contested and important facts in the case. During the trial, the court permitted evidence of the fact that the same saw was afterwards guarded in the way some of the witnesses testified it could have been guarded. This evidence was admitted over the objection of appellant's counsel, and is now alleged as error. The court in admitting the evidence stated that it would be allowed only for the purpose of determining the question whether the saw could have been advantageously guarded at the time of the injury, and the jury were then and subsequently instructed to that effect. The general rule is that the taking of precautions against the future is not to be construed as an admission of responsibilities in the past, and evidence of what has been

done since an accident occurred is not admissible. *Bell v. Washington Cedar Shingle Co.,* 8 Wash. 27, 35 Pac. 405; *Stack v. Nolte,* 29 Wash. 188, 69 Pac. 753. But the avowed purpose here was to show that the saw could have been advantageously guarded, and the jury were instructed to consider it only for that purpose. The fact that it was afterwards guarded by placing a board to the side of it, or placing a hood over it, which guards did not interfere with the practical operation of the saw, was conclusive evidence that it could have been advantageously guarded prior to the time of the injury. These were simple and practical guards, which required no expert or other special knowledge to discover, and which any ordinary person could and should have known about. The statute required proper safeguards for such saws. The fact that the same or similar s ws were subsequently, and within a very short time, guarded by placing a hood over them was, we think, competent evidence that this one could have been advantageously guarded at the time of the injury, and its reception was not error where the jury were told plainly the only purpose for which it might be considered.

Appellant contends that the evidence shows that, at the time of the injury, J. R. Palmer was operating the mill as an independent contractor, and that he alone was liable, if there was any liability in the case. It is true that Mr. Palmer and Mr. E. J. McNeeley testified that on January 1, 1904, Mr. McNeeley, as president of the appellant corporation, entered into a contract with Mr. Palmer, by which contract the corporation was to furnish the mill and logs necessary to operate it, and that Mr. Palmer was to keep the mill in repair and employ the labor and manufacture shingles at fifty-two cents per thousand for the corporation, for the term of one year, and that at the time of the injury to Mr. Erickson, the mill was being run under such agreement. One or two employees also testified that Mr. Palmer, prior to the time of the accident, told them privately that he was running the mill on his own account. It was admitted, that Mr.

Palmer and Mr. McNeeley and their wives held all the stock in the appellant corporation; that Mr. Palmer had been the general manager of the mill for several years prior to that time, and had the control thereof and of the employment of the men; and that, when he assumed control as independent contractor, there was no announcement of the fact except privately to one or two employees, and there was nothing visible around the mill or in connection therewith to indicate any change in the management; that the employees all received their pay in checks of the corporation, and that there were no changes in the apparent management of the mill, and the employees generally did not know of any change; and subsequent to the time of the accident, Mr. Palmer, in attempting to make a settlement of the case with the respondent, stated to her, in the presence of others, that he had no authority to make a settlement, but would submit the matter to the company. Mr. Palmer upon the witness stand admitted that he had made such statements. Under these circumstances it was a question of fact for the jury whether there was a lease of the property to Mr. Palmer who was operating for himself in good faith. The admission of Mr. Palmer to the respondent, after the injury occurred, that "I do not know . . . that I could get the company to say it would settle. I have no power whatever to settle with you," goes very strongly to show that he was not an independent contractor, and to discredit this defense.

Upon the question of the settlement, it was admitted that the respondent placed the case in the hands of one Rossman, an attorney, with full power to bind her in any suit or settlement, and that Mr. Palmer was informed of this fact. There was very strong evidence to the effect that Mr. Palmer was informed that Mr. Rossman's authority to settle the case was limited to $5,000, and further that no money would be paid except in the presence of the respondent, and that, after receiving this information, Mr. Palmer went to Mr. Rossman and made a settlement, without the knowledge or consent of

the respondent, for $500. Soon after respondent learned of this settlement, she repudiated it and returned the check for the part of the money which she received from Mr. Rossman. Mr. Palmer, however, denied that he had any knowledge of the authority of Mr. Rossman other than what was contained in the contract between the respondent and Mr. Rossman. If he had knowledge of the limitation upon Mr. Rossman's authority before the settlement was made, he was, of course, bound by it. The evidence on this question made it a case for the jury, not for the court.

Upon the submission of the case to the jury, the court very fairly and properly instructed the jury upon each of the points hereinbefore discussed. In fact, the only criticisms of appellant upon the instructions are based upon the questions of assumption of risk, of the admissibility of the evidence hereinbefore referred to, and that the court refused to give a peremptory instruction for a verdict in favor of the appellant. Our disposition of these questions above makes it unnecessary to further refer to these instructions.

We find no error in the record. The judgment is therefore affirmed.

CROW, RUDKIN, DUNBAR, FULLERTON, and HADLEY, JJ., concur.

ROOT, J., dissents.