[No. 23619. Department One. March 15, 1932.]

P. A. WHEELER *et al., Respondents,* v. PORTLAND-TACOMA AUTO FREIGHT COMPANY, *Appellant.*[1]

[1]Reported in 9 P. (2d) 101.

*E. L. McDougal* and *Reynolds, Ballinger, Hutson &
Boldt,* for appellant.

*Bausman, Oldham & Walkinshaw* and *Kenneth C.
Davis,* for respondents.

PARKER, J.—The plaintiffs, Wheeler and wife, commenced this action in the superior court for King county seeking recovery for injuries to their persons and injuries to their automobile, suffered, as they claim, as the result of the negligence of the servant of the defendant auto freight company in leaving its large auto freight truck and trailer standing, without proper guard or warning to traffic, upon the paved roadway of the Pacific highway some four miles south of the city limits of Seattle. The cause proceeded to trial in the superior court for King county, sitting with a jury, and resulted in verdict and judgment awarding to Wheeler and wife recovery against the company, from which it has appealed to this court.

The jury was warranted in viewing the principal, outstanding facts to be as follows: There are two paved roadways upon the Pacific highway extending a distance of several miles north and south from the scene of the accident. Each roadway is twenty feet wide. They are separated by a dirt or gravel strip, level with the pavements, four feet wide. The east roadway is used exclusively by north bound traffic. The west roadway is used exclusively by south bound traffic. Adjoining the west pavement, at the scene of the accident, there is a firm shoulder on which vehicles can conveniently park.

The company's truck, while proceeding south, first stopped on the pavement because of the stoppage in

the flow of gasoline from its tank to its carburetor. This occurred near the foot of a four per cent upgrade on the pavement. The driver of the truck, with the aid of another driver of the company, who happened to be then passing, going north, succeeded, after a short time, in getting the truck started. When the truck had then proceeded about four hundred feet, somewhat beyond the top of the four per cent grade, its motor again stopped, the cause being apparently the same. The truck then stood with its left wheels approximately two feet east of the center of the west roadway; thus leaving approximately only eight feet of the west roadway for following vehicles to pass going south. The two drivers again commenced working on the motor to get it started.

After the truck and trailer had remained in this position for a period of from ten to twenty minutes, the automobile of Wheeler and wife, in which they were riding and he was driving, proceeding south on the west pavement, came in contact with the left rear corner of the trailer, causing the injuries to their persons and to their automobile for which they sought and were awarded recovery. This occurred at approximately 7:30 o'clock in the evening of February 12th. That was after the coming of darkness of the night. There was not then displayed at the rear of the trailer a lighted red light, as required by law. The color of the trailer was such that it was not readily observable at night by a driver approaching it from the rear, until he would come within a very short distance of it.

Wheeler was driving at about thirty-five miles per hour. This was within the lawful speed limit on that portion of the highway. His lights and brakes were in good condition, but he did not see the trailer until about thirty feet from it, when, in trying to pass it on

the left, his car came in contact with the left rear corner of the trailer.

It is contended in behalf of the company that the trial court erred to its prejudice

" . . . in permitting plaintiff to prove that defendant's driver, after the accident, placed or caused to be placed flares on the highway to avoid another accident."

The portion of the record upon which this contention is rested is somewhat involved. We think, however, it is sufficient for present purposes for us to quote from the quotations from the record made by counsel for the company in their brief. During the examination of a witness for Wheeler and wife, the following occurred:

"Mr. Oldham [counsel for Wheeler and wife]: Q. Were you present at the time any flares were put out? A. Yes, sir. Q. What were they? A. Those regular red flares that they use. Q. For what purpose? Mr. Reynolds [counsel for the company]: I object to this as being immaterial, what was done after the accident happened. He can inquire what was done before the accident happened, what they did to prevent other people being hurt. Mr. Oldham: If he realized he had a stalled truck, it would be the duty of the truck driver to use due diligence to warn people of danger. The Court: I think he may answer the question. [The question was not answered, but the examination proceeded.] Q. Do you know where the flares were? A. The first two flares that came out I furnished the flare. I do not remember the man that put them out. Mr. Reynolds: I move to strike out 'that he furnished the flares,' or flares were put out after the accident happened, as being wholly immaterial and having a tendency to mislead the jury. Mr. Oldham: I will consent that this may be stricken out, about his furnishing the flares. The Court: All right, it may be stricken. Q. Do you recall whether or not any flares were taken from the truck or trailer? A. Yes, sir; there were. Q. What was done with those flares

that were taken from the truck or trailer? Mr. Reynolds: I move to strike that out as incompetent and immaterial. Mr. Oldham: It seems to me that is competent. The Court: I think it is. Q. It happened how soon after the accident? A. I should judge about ten minutes after the accident before there was a flare stuck out on the highway.''

During the examination of another witness for Wheeler and wife, one of the state highway officers who arrived upon the scene some fifteen or twenty minutes after the occurrence of the accident, the following occurred:

''Mr. Oldham: Q. What was done after your arrival? A. The driver, I think it was the driver of the truck that was struck, had some fuses there, and I had some fuses, and he went down and lit his fuses. Mr. Reynolds: I object to that as being incompetent, immaterial and irrelevant. There is no law requiring any fuses, and this was after the accident happened twenty minutes, and what they did at that time was immaterial and irrelevant. Mr. Oldham: It shows what he had and what was available for him to put out. Mr. Reynolds: Now, after counsel has stated the reason for it I move to strike it out on the ground stated, and under the state law there is no requirement for any fuses or anything else than the lights specified in the statute which were on the truck. The Court: Objection overruled; exception allowed.''

In so far as this testimony tended to show that the truck driver had flares or fuses available, which he could have timely put out on the pavement prior to the accident to warn traffic approaching from the north, and failed to timely so use the flares, it seems plain to us that this testimony was admissible. In *Erickson v. McNeeley & Co.*, 41 Wash. 509, 84 Pac. 3, there was involved the admissibility of evidence of a guard being put upon a saw to protect its operator, after one of its operators had been injured, as was claimed, by the

absence of a guard. Judge Mount, speaking for the court, and holding that such evidence was admissible for the purpose of showing the practicability of so guarding the saw, said:

"The question whether or not the saw could have been advantageously guarded was one of the contested and important facts in the case. During the trial, the court permitted evidence of the fact that the same saw was afterwards guarded in the way some of the witnesses testified it could have been guarded. This evidence was admitted over the objection of appellant's counsel, and is now alleged as error. The court in admitting the evidence stated that it would be allowed only for the purpose of determining the question whether the saw could have been advantageously guarded at the time of the injury, and the jury were then and subsequently instructed to that effect. The general rule is that the taking of precautions against the future is not to be construed as an admission of responsibilities in the past, and evidence of what has been done since an accident occurred is not admissible. *Bell v. Washington Cedar Shingle Co.,* 8 Wash. 27, 35 Pac. 405; *Stack v. Nolte,* 29 Wash. 188, 69 Pac. 753. But the avowed purpose here was to show that the saw could have been advantageously guarded, and the jury were instructed to consider it only for that purpose. The fact that it was afterwards guarded by placing a board to the side of it, or placing a hood over it, which guards did not interfere with the practical operation of the saw, was conclusive evidence that it could have been advantageously guarded prior to the time of the injury."

In *Thompson v. Issaquah Shingle Co.,* 43 Wash. 253, 86 Pac. 588, this view of the law was adhered to, Judge Gose, speaking for the court, saying:

"One witness offered by respondent was permitted, over appellant's objections, to testify as to certain changes made on the knot saw table immediately after the accident. This evidence tended to show that the left-hand saw could be advantageously guarded by

other methods than the use of a splint chute, and was admissible for that purpose. *Erickson v. McNeeley & Co.*, 41 Wash. 509, 84 Pac. 3.''

In *Fonder v. General Construction Co.*, 146 Wis. 1, 130 N. W. 884, a similar question was considered and disposed of by the court, as follows:

''Error is assigned in the admission of evidence. Evidence was admitted, under defendant's objection, to the effect that after the injury the men operating the cranks attached to the drum on the face derrick were removed from the position formerly occupied at such work and placed some sixty feet away outside of the building and the rope led from the face derrick to a crank set up sixty feet from the derrick. We find no prejudicial error in the admission of this evidence. One of the claims of the plaintiff was that in the operation of the derrick the men were required to stand in a dangerous position, and the evidence was offered and received to show that it was practicable to have the men operating the power stand out of danger as they did after the injury, and the evidence was offered, not for the purpose of showing negligence on the part of defendant, but to show it was practicable to so place the men furnishing the power that they would be out of danger. For this purpose the evidence was properly admitted. *Grundy v. Janesville*, 84 Wis. 574, 54 N. W. 1085; *Lind v. Uniform S. & P. Co.*, 140 Wis. 183, 120 N. W. 839; *Norris v. Atlas S. S. Co.*, 37 Fed. 426; *Laporte C. Co. v. Sullender*, 165 Ind. 290, 75 N. E. 277; *Redepenning v. Rock*, 136 Wis. 372, 117 N. W. 805; *Willey v. Boston E. L. Co.*, 168 Mass. 40, 46 N. E. 395 [37 L. R. A. 723]; *Quinn v. N. Y., N. H. & H. R. R. Co.*, 56 Conn. 44, 12 Atl. 97 [7 Am. St. Rep. 284]; *Kuhns v. Wis., I. & N. R. Co.*, 76 Iowa, 67, 40 N. W. 92.''

In *Wagner v. Gilsonite Construction Co.*, 220 S. W. (Mo.) 890, a similar question was considered and disposed of by the court, as follows:

''We also rule that plaintiff's testimony that after the accident the saw in question was protected by the

frame being boarded up in places was competent. One of the issues was whether it was practicable to have securely guarded the saw so as to protect plaintiff from injury. We know of no more effective or cogent proof of that issue on the plaintiff's part than proof of the fact that it was actually done whether before or after the accident. *Phillips v. Shoe Co.,* 178 Mo. App. 197, 165 S. W. 1183.''

The jury could well conclude that, if the truck was so disabled that it could not move by its own power, as its driver claimed, he became well aware of that fact immediately upon the truck stopping; that the flares available to the driver would have been effective in warning vehicles approaching from the north had they been promptly placed on the pavement to the north of the truck; and that they were not timely so placed.

Counsel for the company invoke the law as announced by the supreme court of the United States in the leading case of *Columbia & Puget Sound R. Co. v. Hawthorne,* 144 U. S. 202, decided in 1891, reversing the decision of the supreme court of Washington Territory. (3 W. T. 353, 19 Pac. 25.) In that case, there was proof of a change in a machine, made by the railroad company after the accident. The proof had no application other than as tending to give rise to an inference that the change was, in effect, an admission on the part of the railroad company of its negligence in its prior maintenance of the machine. The proof was so viewed by both courts. Holding the proof inadmissible, Justice Gray, speaking for the supreme court of the United States, said:

''This writ of error, therefore, directly presents for the decision of this court the question whether, in an action for injuries caused by a machine alleged to be negligently constructed, a subsequent alteration or

repair of the machine by the defendant is competent evidence of negligence in its original construction.

"Upon this question there has been some difference of opinion in the courts of the several states. But it is now settled, upon much consideration, by the decisions of the highest courts of most of the states in which the question has arisen, that the evidence is incompetent, because the taking of such precautions against the future is not to be construed as an admission of responsibility for the past, has no legitimate tendency to prove that the defendant had been negligent before the accident happened, and is calculated to distract the minds of the jury from the real issue, and to create a prejudice against the defendant. *Morse v. Minneapolis & St. Louis Railway,* 30 Minnesota, 465; *Corcoran v. Peekskill,* 108 N. Y. 151; *Nalley v. Hartford Carpet Co.,* 51 Connecticut, 524; *Ely v. St. Louis Etc. Railway,* 77 Missouri, 34; *Missouri Pacific Railway v. Hennessey,* 75 Texas, 155; *Terre Haute & Indianapolis Railroad v. Clem,* 123 Indiana, 15; *Hodges v. Percival,* 132 Illinois 53; *Lombar v. East Tawas,* 86 Michigan 14; *Shinners v. Proprietors of Locks & Canals,* 154 Mass. 168.

"As was pointed out by the court in the last case, the decision in *Readman v. Conway,* 126 Mass. 374, 377, cited by this plaintiff, has no bearing upon this question, but simply held that in an action for injuries from a defect in a platform, brought against the owners of the land, who defended on the ground that the duty of keeping the platform in repair belonged to their tenants and not to themselves, the defendants' acts in making general repairs of the platform after the accident 'were in the nature of admissions that it was their duty to keep the platform in repair, and were therefore competent.' "

It is of interest to note that, in the latter part of this quotation, it is recognized to be the law that evidence of this nature may be admissible when it tends in some substantial measure to prove some fact material to the inquiry other than admission by the de-

fendant of his negligence, relating to physical conditions existing at the time of the accident charged as the result of his negligence.

Our decisions in *Bell v. Washington Cedar Shingle Co.*, 8 Wash. 27, 35 Pac. 405, and *Aldread v. Northern Pac. R. Co.*, 93 Wash. 209, 160 Pac. 429, we think, are not out of harmony with our decisions in *Erickson v. McNeeley & Co.* and *Thomson v. Issaquah Shingle Co.*, above noticed.

We do not overlook those portions of the above quoted testimony which show that the driver of the truck lit and put out on the pavement, after the accident, the flares in his possession available to him for that purpose. That portion of the testimony came out incidental to the testimony that the driver had the flares available, and that he failed to put any of them out on the pavement for a period of ten to twenty minutes after the truck stalled. We do not see in any of the remarks of counsel for Wheeler and wife any suggestion that the offered proof with reference to the flares was for the purpose of tending to show any admission of negligence on the part of the driver of the truck. On the other hand, counsel for Wheeler and wife stated, in the presence of the jury, the purpose of the evidence to be that: "It shows what he [the driver] had and what was available for him to put out."

We are of the opinion that the proof was admissible for that purpose. The record does not show any request that the jury be instructed to consider the evidence relating to the flares as being so limited in its effect. We concede that the company would, upon request, have been entitled to such an instruction. We are of the opinion that, under the circumstances, there was no prejudicial error attending the testimony relating to the flares.

It is further contended in behalf of the company that the trial court erred to its prejudice in giving to the jury an instruction making Laws of 1927, p. 808, § 47, being § 6362-47, Rem. 1927 Sup., applicable to the stopping and parking of the truck upon the west pavement of the highway. Counsel cite the portion of that section reading as follows:

"In no event shall any person park or leave standing any vehicle whether attended or unattended upon any public highway unless a clear and unobstructed width of not less than 16 feet upon the main traveled portion of said highway opposite such standing vehicle shall be left for the free passage of other vehicles thereon."

It is argued that, while the jury would be warranted in believing from the evidence that the truck was stopped and, in effect, parked upon the west roadway so as to leave considerably less than sixteen feet in width of that roadway to its left, this section is not applicable to that situation, because the highway consisted of both the east and west roadways, including the dirt or gravel strip between; that is, that it constituted a highway forty-four feet wide, which, of necessity, would leave much more than sixteen feet of the highway to the left of the stopped and parked truck. It seems clear to us that this section has application to each of those paved roadways separately. We think the court did not err in so applying this section.

We conclude that the judgment must be affirmed. It is so ordered.

MITCHELL, BEELER, and HERMAN, JJ., concur.

TOLMAN, C. J. (dissenting)—In my opinion, there was error in the admission of testimony. I therefore dissent.