[No. 23883. Department Two. December 14, 1932.]

CHARLES M. HATCHER, *Respondent,* v. GLOBE UNION MANUFACTURING COMPANY, *Appellant.*[1]

[1]Reported in 16 P. (2d) 824.

*Roberts, Skeel & Holman* and *W. R. McKelvy*, for appellant.

*Vanderveer & Bassett,* for respondent.

STEINERT, J.—This is an action to recover damages for personal injuries resulting from lead poisoning, alleged to have been contracted and sustained by plaintiff while in the employ of defendant. Trial was had before the court, sitting with a jury, and resulted in a verdict and judgment for plaintiff. The case is now before us on defendant's appeal.

Appellant operates a factory in Seattle for the manufacture of storage batteries, which are made of metallic lead and lead sulphide. Its plant consists of a single room containing about eighty-one hundred square feet, with a ceiling about fifteen feet high. There are windows on three sides of the room, and above are a number of skylights. In the room, various processes in connection with the manufacture of batteries are conducted, such as molding the lead, assembling the batteries and sawing lugs off of the battery plates. This last-named process is carried on by means of a circular saw eight inches in diameter, extending three inches above the table on which it is mounted, and revolving at the rate of thirty-six hundred revolu-

tions per minute. Beneath, and connected with, the saw is a hopper, designed to catch and carry away the lead dust resulting from the operation. Respirators are furnished to the workmen for their use while engaged in the work.

Respondent had been in the employ of the appellant at various times since 1923. His duties, however, had for the most part been confined to work other than the sawing of lead plates, although admittedly he had been around, and witnessed, the operation. About the middle of November, 1930, he was assigned to the duty of operating the saw, on part time work.

Respondent's evidence was that he first noticed the effect of the lead dust upon his system about December 15, 1930. Violent pains in the stomach and congestion in the lungs began to manifest themselves. He complained to the foreman, and was then given a respirator, but despite this protection, his condition became worse and he gradually grew weaker and weaker. After a lay-off during the Christmas holidays, he felt better, but a resumption of the work renewed the symptoms above indicated, accompanied with pain in the limbs and stiffness in the joints. His condition gradually grew worse until he was compelled to quit work entirely about March 31, 1931.

Respondent's evidence was to the further effect that the floor of the factory was not properly cleaned or swept, but was permitted to become dirty and full of lead dust; that notwithstanding this, he was not supplied with a respirator until after the deleterious effect of the lead poison had begun to manifest itself. There was also evidence, either admitted or offered, to the effect that other workmen had been affected by the lead dust and had made complaint about it, although most of this evidence was not permitted to go to the jury.

The appellant, on the other hand, produced considerable evidence to the effect that the plant was kept in proper condition, was regularly inspected by the authorities, and had been approved by them both as to ventilation and healthful working conditions; also, that the workmen, including the respondent, had at all times been supplied with respirators to be used while at work in the factory.

The complaint alleged, among other things, that the defendant (appellant) well knew that the saw threw off lead particles and dust that were highly poisonous and dangerous to human beings, and that ordinary prudence required it to equip the saw with a blower or other device to carry off these lead particles and dust, but that it negligently failed to do so; it also alleged that plaintiff (respondent) was unfamiliar with the work and its incident dangers, and that defendant failed to give him any warning with reference thereto. The answer contained a general denial of these allegations and also two affirmative defenses pleading contributory negligence and assumption of risk, which in turn were denied.

Appellant's brief contains many assignments of error. It first contends that its demurrer to the complaint should have been sustained because respondent's remedy was under the workmen's compensation act and not by an action at law. We have settled this question to the contrary in *Pellerin v. Washington Veneer Co.*, 163 Wash. 555, 2 P. (2d) 658, and also in *Calhoun v. Washington Veneer Co.*, ante p. 152, 15 P. (2d) 943. We adhere to the conclusions reached in those decisions and therefore deem it unnecessary to discuss this assignment any further.

By a series of assignments, appellant next raises the question of the sufficiency of the evidence to take the case to the jury, either at the close of re-

spondent's case or at the conclusion of all the evidence. Under the evidence as we have generalized it above, the jury had the right to accept and believe respondent's version, and we are convinced that there was sufficient to make a case for their consideration.

The appellant next contends that the court erred in admitting testimony showing alterations of certain machinery, particularly with reference to the installation of a blower equipment, subsequent to the time that respondent had become sick and had left its employ. Appellant also complains of the conduct of counsel in putting the same matter repeatedly before the jury after the court in subsequent rulings had sustained appellant's objection to its further introduction. This evidence was offered on cross-examination of appellant's witnesses. We think that the court erred in admitting the testimony to the extent that it did, and that the error was aggravated by counsel's repeated attempts to introduce similar evidence after the court had declined to permit its repetition. In *Bell v. Washington Cedar Shingle Co.*, 8 Wash. 27, 35 Pac. 405, a similar question was presented, and the court there held that the admission of such evidence was error. In the course of the opinion, the following language from the case of *Columbia etc. R. Co. v. Hawthorne*, 144 U. S. 292, was quoted with approval:

" 'Upon this question there has been some difference of opinion in the courts of the several states. But it is now settled, upon much consideration, by the decisions of the highest courts of most of the states in which the question has arisen, that the evidence is incompetent, because the taking of such precautions against the future is not to be construed as an admission of responsibility for the past, has no legitimate tendency to prove that the defendant had been negligent before the accident happened, and is calculated to distract the minds of the jury from the real issue, and

to create a prejudice against the defendant.' (Citing cases.)''

Following the quotation, our court proceeds, on pp. 29 and 30:

''That such is the rule established by the courts of most of the states is well settled. Respondent makes little contention against such rule, but claims that it is not applicable to the facts of this case. The testimony to which exception was taken by the defendant was not introduced as a part of the plaintiff's case. It was brought out upon the cross examination of defendant's witnesses. Such being the fact, he contends that it was competent for the reason that it had a tendency to discredit their testimony in chief in which they had testified that the machinery in use at the time the accident occurred was, in their opinion, properly constructed and in good condition. In our opinion such cross examination should not have been allowed. If the fact that changes had been made cannot be introduced to show negligence on the part of the defendant for the reason that it has no legal bearing upon the question, we are unable to see how such fact can in any manner affect the testimony of a witness who has testified as to the character of the machinery at the time of the accident. If the alterations had no tendency whatever to show that the machinery was unsafe, it is impossible to see how such fact could affect the testimony of a witness who has sworn to the condition of such machinery.''

See, also, *Carter v. Seattle,* 21 Wash. 585, 59 Pac. 500; *Aldread v. Northern Pacific Ry. Co.,* 93 Wash. 209, 160 Pac. 429.

The issue before the court was not whether the installation of a blower was practicable and feasible, and it was not offered for that purpose. The issue was whether its installation was required under the factory act, and the objectionable evidence was offered generally and unconditionally. Its effect was to convey to the minds of the jury the impression that the

subsequent installation was evidence of negligence in failing to install it sooner. We think that the evidence that was admitted by the court and the subsequent repeated attempts to introduce similar evidence after the court had ruled adversely to its repetition, had a prejudicial effect and constituted reversible error.

By another assignment, appellant complains of the act of the court in permitting counsel, in the presence of the jury, to make an offer of proof regarding the effect of the lead dust upon a kitten that had at one time strayed into the factory. Because of the peculiar nature of the evidence suggested by the offer, and the effect that it would very likely have upon an attentive jury, we are of the opinion that it was error to permit such offer to be made in the jury's presence.

Appellant finally complains of instruction No. 5 given by the court, and also of the court's refusal to give certain instructions requested by it. The instruction given relates to a particular section of the factory act which the court quoted and included in one of its other instructions. The statute involved is Rem. Comp. Stat., § 7659, and reads as follows:

"Every factory, mill or workshop where machinery is used and manual labor is exercised by the way of trade for the purposes of gain within an inclosed room (private houses in which the employees live, excepted) shall be provided in each workroom thereof with good and sufficient ventilation and kept in a cleanly and sanitary state, and shall be so ventilated as to render harmless, so far as practicable, all gases, vapors, dust or other impurities, generated in the course of the manufacturing or laboring process carried on therein; and if in any factory, mill or workshop, any process is carried on in any inclosed room thereof, by which dust is generated and inhaled to an injurious extent by the persons employed therein, conveyors, receptacles or exhaust fans, or other mechanical means, shall be pro-

vided and maintained for the purpose of carrying off or receiving and collecting such dust.''

It was respondent's theory that liability on the part of the appellant attached under the provisions of the statute. It was appellant's theory that it did not. Evidence was introduced in support of both theories. It would have been very proper, as well as profitable, for the court to have given an instruction advising the jury, in some way, that the application of the statute depended upon the choice of theories which, under the evidence, they felt compelled to follow; that is, that their verdict would be dependent upon whether appellant had or had not, as a matter of fact, so ventilated its premises as to render harmless, so far as practicable, all gases, vapors, dust and other impurities, and whether, as a matter of fact, the process of manufacture in the premises had or had not generated dust to an extent injurious to the persons employed therein. No such instruction, however, was requested, and we are, therefore, not concerned with the failure to give it. The only question before us now is whether the instructions were technically correct.

Instruction No. 5 given by the court told the jury that the defense of assumption of risk was not available to an employer who failed to comply with the provisions of the factory act with respect to the place in which he required his employees to work. We have repeatedly held that such is the law. *Depre v. Pacific Coast Forge Co.*, 151 Wash. 430, 276 Pac. 89, and cases cited therein.

Certain requested instructions would have advised the jury that the duty imposed by law upon the employer is merely to use reasonable and ordinary care to furnish a safe place to work. Such is not the law where the action is brought under the factory act and the evidence brings it within its provisions.

Whether the assumption of risk could have been successfully invoked as a defense, was dependent, primarily, upon whether the appellant had made a bona fide effort to comply with the provisions of the statute. *Erickson v. McNeeley & Co.*, 41 Wash. 509, 84 Pac. 3.

Certain other requested instructions would have advised the jury that one seeking to recover damages for injuries sustained must use his own faculties and the means afforded him for his own protection, and that a failure so to do bars recovery on his part. What we have said with respect to the requested instructions above mentioned, applies with equal force to these. No instruction, we repeat, was requested wherein the jury was required to determine whose theory of the evidence it would adopt. In our opinion, the court committed no error, under the circumstances, in the matter of instructions.

For the errors previously mentioned, however, the judgment must be, and is, reversed, and a new trial ordered.

TOLMAN, C. J., MAIN, and BEALS, JJ., concur.