[No. 25764. Department One. November 4, 1935.]

EARL McGINNIS, *Respondent*, v. GLOBE UNION MANU-
FACTURING COMPANY, *Appellant*.[1]

*Roberts & Skeel* and *W. R. McKelvey,* for appellant.

*Vanderveer & Bassett,* for respondent.

TOLMAN, J.—This is an action for personal injuries tried to a jury. The plaintiff obtained a verdict, and from a judgment thereon the defendant has appealed.

The amended complaint upon which the case was tried charged that the defendant was engaged in the business of manufacturing storage batteries, and that the plaintiff was employed by it as a mixer.

Paragraph II of the amended complaint reads as follows:

[1]Reported in 50 P. (2d) 900.

"That the formula prescribed by the defendant for the preparation of said paste required that red lead, lithage, and other ingredients be first mixed together in powdered form for ten minutes in a vat equipped with a mechanical agitator, after which water was added and the batch was mixed for five minutes more, then sulphuric acid was added and this was again mixed for twelve minutes more. That the mixing of said powdered materials generated a great deal of dust, and the addition of sulphuric acid as above-described caused the paste to become very hot and to give off fumes and gases, and that both said dust and said fumes and gases were highly poisonous and were very injurious to human health. That it was entirely practical to equip said vat with a hood and suction device to trap and carry off said dust and fumes and gases, but that the defendant negligently failed to do so, as a natural and proximate result whereof the plaintiff, in the course of working about said vat in the performance of his duties, inhaled said dust and fumes and gases into his bronchial tubes and thereby contracted lead poisoning, which he is informed and believes will permanently impair his health and will for a long time cause him to suffer intense pain in the region of his stomach and abdomen, and incapacitate him from performing any gainful labor, to his damage in the sum of $10,000.''

Thus it appears that one of the vital issues tendered was whether or not the appellant's failure to install safety devices was the proximate cause of the lead poisoning with which the respondent became affected.

The evidence offered by and on behalf of the respondent sufficiently established the methods employed, and that dust, carrying lead, was created by those methods, and that fumes and gases were also generated. There was also proof to the effect that no suction device to trap and carry off the dust, fumes and gases was installed by the appellant until after the respondent became ill and ceased his work. Following a cessation of work by the respondent, such a

device was installed, which the jury was entitled to find might or could take away some part of the dust and lessen the fumes and gases. There was apparently no attempt to prove that there was any device known which would wholly eliminate the dust, fumes and gases.

Respondent's proof also showed that he was furnished with an efficient respirator and carefully instructed to be sure to use it, to keep himself clean, and also that he was furnished with all of the necessary facilities for keeping clean. The respirator was equipped with a sponge, or pad, to be kept wet, through which the wearer breathed. An abundant supply of such sponges was kept ready for use, and the wearers were instructed to change the sponge frequently so that the respirator would be kept efficient.

On cross-examination, respondent testified as follows:

"Q. Mr. McGinnis, does any lead dust go through these little sponges on this respirator? A. Well, it looks like it does. It gets awful heavy in there. Q. If you breathe entirely through that respirator you think that lead dust would go through there? A. I think more of it comes in through the working from behind. Q. Your face gets dirty and gets that way? A. It will go through there, too, where it opens. Q. You mean it will work underneath? A. Yes. Q. But I say, does any dust go through that sponge where you get your air? No dust can go through that at all, can it? A. Well, if I was to answer that I would say dust must go through that. It goes clear through and gets on the inside. But when I see dust showing up I generally change. Q. As to it getting on your face and underneath the respirator, you had to wash your face and keep clean? A. Keep clean. Q. Where did you get the lead dust, through your mouth or through your nose? A. I guess if you breathe it will get into your nose. Q. Well, when the dust formed on your face around the edge of that respirator, around here (indicating),

you didn't breathe that in, did you? A. That must have gone right into the pores. Q. That did not work up and get into your mouth, did it? A. No. Q. Then I am still at a loss to know where you got this lead dust? . . . Q. Did you ever work there at all over that dust without the respirator being on? A. No, sir. Q. So that you contracted lead poisoning by reason of getting dust which must have come through this respirator which was provided you by the defendant to protect you from dust, is that correct? A. It must have come through, yes.''

■ This evidence, while far from conclusive, was sufficient to take the case to the jury, and from it the jurors were entitled to believe that dust was present in greater quantities than would have been the case if a suction device had been maintained; that the dust thus present penetrated the respirator even when properly worn and cared for, and that the lead poisoning complained of was the natural and proximate result of the failure to install and maintain a suction device.

There was no error in refusing to dismiss the action or in the denial of appellant's motion for judgment n. o. v.

[2] While the complaint charges that the fumes and gases which escaped during the mixing process were highly poisonous, yet the respondent produced no proof whatever to that effect. On the other hand, appellant produced the testimony of a competent chemical engineer, who captured and tested the fumes and gases from this very operation, and who testified that such tests carefully and properly conducted showed no lead in the fumes and gases. This testimony was corroborated by the testimony of two other experts, so that it amounts to a demonstration. No attempt was made to meet or refute this evidence by the respondent.

Under this state of the record, the appellant at the proper time moved the court to withdraw from the jury the question of gases and fumes. This motion was denied, and the court proceeded to so instruct the jury as to permit it to find that the respondent incurred lead poisoning from breathing or inhaling such gases and fumes. This was error.

Clearly, the respondent is here complaining of lead poisoning only, and as it appears without conflict or denial that the gases and fumes carried no lead, the jury should not have been permitted by speculation or guess to find that such gases and fumes caused lead poisoning.

Some of the remaining errors assigned relate to matters which are not likely to occur on a new trial and they will therefore not be discussed. The other assignments relate to instructions given or refused. In these matters, the trial court followed the rule laid down by this court in *Hatcher v. Globe Union Manufacturing Co.*, 170 Wash. 494, 16 P. (2d) 824. Therefore, except as to the matter of gases and fumes, we must hold that the jury was properly instructed.

Because of the error indicated, the judgment is reversed, with instructions to grant a new trial.

MITCHELL, STEINERT, GERAGHTY, and HOLCOMB, JJ., concur.