[No. 25594. Department Two. January 6, 1936.]

WALTER ROOKER, *Respondent*, v. ALASKA STEAMSHIP
COMPANY, *Appellant*.[1]

[1]Reported in 53 P. (2d) 295.

72

*Bogle, Bogle & Gates, Ray Dumett, Edward G. Dobrin,* and *Stanley B. Long,* for appellant.

*Vanderveer & Bassett,* for respondent.

BEALS, J.—The plaintiff, Walter Rooker, having served as a marine fireman in various ships since January, 1929, was, during the month of May, 1932, by defendant, Alaska Steamship Company, employed as a fireman to make a voyage from Seattle to Alaska and return on the S. S. Lakina. The voyage commenced May 5th and terminated at Seattle four weeks later; plaintiff leaving the ship at Seattle June 10th, after a further voyage to Tacoma and return.

Four members of the crew, including plaintiff, were quartered in the firemen's forecastle located on the

starboard side of the ship. This forecastle was equipped with four bunks, arranged in two tiers along the starboard side. Aveson, a fireman, occupied the forward upper bunk; Goetz, a deck boy, the forward lower bunk; plaintiff, the after upper bunk, over the bunk occupied by O'Brien, a fireman. On the after bulkhead was placed a steam radiator equipped with two valves, the upper being the intake or control valve, the lower being the outlet or exhaust valve.

On October 17, 1933, plaintiff sued defendant, alleging that, on the voyage, the defendant negligently permitted the control valve on the radiator to become worn and loose, with the result that large quantities of steam were constantly discharged into the forecastle, causing plaintiff's bedding to become damp; and that, as a result of sleeping in a damp bunk, plaintiff contracted a cold, which later developed into double pneumonia; and that, as a natural and proximate result of this illness, plaintiff's left lung became tubercular, seriously impairing plaintiff's general health, to his damage in a large sum.

The defendant by its answer admitted plaintiff's employment, but denied every other allegation in the complaint, pleading affirmatively that, if plaintiff suffered any injury, the proximate cause thereof was his own negligence and carelessness. The action was tried to a jury, which brought in a verdict for fifteen thousand dollars in plaintiff's favor. From a judgment entered upon this verdict, defendant has appealed.

Appellant assigns error upon the overruling of its challenge to the sufficiency of the evidence interposed at the close of respondent's testimony and again at the close of the case. Appellant also complains of the overruling of its motion for a directed verdict, upon the denial of its motion for judgment in its favor notwithstanding the verdict, and upon the refusal of the trial

court to grant a new trial. Error is also assigned upon the giving of certain instructions, and upon the refusal of the trial court to give many of the instructions requested by appellant. Appellant also complains of the admission of certain testimony over its objection, and upon rulings sustaining respondent's objections to questions propounded by appellant to one of its witnesses.

In the first place, appellant contends that the evidence is insufficient to support any judgment in respondent's favor. The action was brought under a Federal statute found in U. S. C. A., Title 46— Shipping; respondent arguing that § 669 is applicable, while appellant contends that the action was based solely on a charge of common law negligence, and that § 688 governs. The two sections referred to read, respectively, as follows:

"§ 669. *Clothing and heat.* Every vessel bound on any foreign voyage exceeding in length fourteen days shall also be provided with at least one suit of woolen clothing for each seaman, and every vessel in the foreign or domestic trade shall provide a safe and warm room for the use of seamen in cold weather. Failure to make such provisions shall subject the owner or master to a penalty of not less than $100."

"§ 688. *Recovery for injury to or death of seaman.* Any seaman who shall suffer personal injury in the course of his employment may, at his election, maintain an action for damages at law, with the right of trial by jury, and in such action all statutes of the United States modifying or extending the common-law right or remedy in cases of personal injury to railway employees shall apply; and in case of the death of any seaman as a result of any such personal injury the personal representative of such seaman may maintain an action for damages at law with the right of trial by jury, and in such action all statutes of the United States conferring or regulating the right of action for death in the case of railway employees shall be appli-

cable. Jurisdiction in such actions shall be under the court of the district in which the defendant employer resides or in which his principal office is located.''

 Neither section of the Federal statute was referred to in the complaint, and appellant contends that, while it might properly be held that § 688, *supra,* applies, even though the complaint contains no reference to the statute (*Engel v. Davenport,* 271 U. S. 33, 46 S. Ct. 410; *Luckenbach S. S. Co. v. Campbell,* 8 F. (2d) 223), it cannot be held that § 669, *supra,* is applicable, that section not having been referred to in the pleadings and having been for the first time brought into the case by the court's instructions to the jury. In this connection, appellant argues that § 669 is not a safety statute, while respondent argues that it comes within that classification.

In the first place, it must be held that the action falls within the scope of the Federal statutes above referred to, whether the appropriate sections thereof were referred to in the complaint or not. If the allegations of the complaint and evidence properly admitted bring the case within the purview of the Federal statutes, the rights of the parties must be determined after due consideration of such statutes. The case at bar falls within this rule, and the statute, if applicable under the facts, was properly considered by the trial court in instructing the jury. In *Luckenbach S. S. Co. v. Campbell, supra,* the circuit court of appeals for the ninth circuit, speaking through Judge Rudkin, said:

"There seems to be some contention that no reference was made in the libel to any statute, but this is wholly unnecessary. The pleader must plead his facts, and, when he does so, he may invoke the protection of the common law, or of any applicable statute.''

 We are convinced that § 669 is a safety statute. Appellant argues that it should not be so considered, but

no authority is cited which supports this proposition. Appellant argues that the act was passed merely for the greater convenience and accommodation of seamen, but by its terms the act refers to matters more basic and vital than mere convenience and accommodation. Under the act, the vessel "shall provide a safe and warm room for the use of seamen in cold weather," failure to make such provision subjecting the owner or master to a penalty of not less than one hundred dollars. This certainly indicates a reference to matters more important than mere convenience and accommodation. It is also evident that the room provided as sleeping quarters comes within the scope of the words "room for the use of seamen," as contained in the section now under discussion.

Appellant argues that the room was warm, having been provided with a steam radiator. Under the evidence introduced by respondent, however, we hold that the room was not "safe and warm," and we are accordingly satisfied that the section of the Federal statute now under discussion is a safety statute and applies to the situation here presented. In this connection, it may be noted that in the matter of *The Ida McKay,* 99 Fed. 1002, Hanford, District Judge, referred to the act in question as

" . . . an amendment of section 4572, Rev. St., so as to positively require every vessel in the foreign and domestic trade to provide a safe and warm room for use of seamen in cold weather."

Respondent's contention is, of course, that, because of the unsafe and unhealthful condition of the room in which he was assigned sleeping quarters, he was rendered sick, and that the pneumonia and tuberculosis from which he suffered were the proximate result of the unhealthful condition of the forecastle. Of course, violation of a statute such as that with which

we are here concerned constituted negligence as matter of law. *Spokane etc. R. Co. v. Campbell,* 241 U. S. 497, 36 S. Ct. 683; *San Antonio & A. P. R. Co. v. Wagner,* 241 U. S. 476, 36 S. Ct. 626; *Hansen v. Seattle Lumber Co.,* 41 Wash. 349, 83 Pac. 102; *Erickson v. McNeeley & Co.,* 41 Wash. 509, 84 Pac. 3.

The first question to be considered, then, is whether or not, under the evidence, there was a question of fact upon which the jury should pass. Appellant argues that there was no such question, contending that respondent's testimony was conflicting, obviously exaggerated, inherently improbable, and inconsistent with admitted physical facts.

Respondent testified that he was well and strong when he shipped on the Lakina; that the radiator in the forecastle which he occupied was situated on the bulkhead near the end of his bunk; that, about a week after the ship left Seattle, the weather became cold, and for the first time steam was turned on in the radiator; that the control valve leaked, permitting steam to escape into the forecastle. Respondent further testified that the escaping steam was readily visible, and that it caused his bedding to become and remain damp; that the radiator continued to leak for a period which he estimated from a little less to a little over a week; that respondent did not at first complain to the ship's officers, because one of his roommates had told him that a complaint had already been registered; that respondent finally complained to the first assistant engineer, shortly after which the leak was stopped. Other witnesses, both for respondent and appellant, testified that there was some leakage of steam. Appellant's witness O'Brien testified that he tightened the valve, after which there was no further leakage.

The evidence is convincing to the effect that respondent was ill when he left the ship, and that shortly there-

after he became very sick, and that he was for many months suffering from tuberculosis. It was appellant's contention that respondent had tuberculosis before he shipped on the voyage, but the testimony along this line was rather vague and was evidently not believed by the jury. Respondent testified positively that, for several days, he slept in a bunk which was very damp; that he requested and received dry bedding, but that due to the constantly escaping moisture the dry bedding soon became damp. The leak in the radiator valve is admitted, the conflict in the evidence arising over the period of time during which the leak existed and the amount of steam which escaped.

Appellant makes much of a statement of respondent on direct examination, apparently to the effect that some steam escaped into the room whether the valve was turned on or off, arguing that, if the valve was closed, no steam could escape. Of course, if a valve in perfect condition is shut off, the valve does not leak, but a defective valve may not close entirely, or one observing it may think it closed when it is not completely shut off. In its argument to the jury, appellant was entitled to make the most of this testimony of respondent, but it cannot be held that, as matter of law, the entire weight of respondent's testimony was thereby destroyed.

The steel "skin," or side, of the ship constituted the starboard wall of the forecastle against which the bunks were placed. The steel deck plates constituted the ceiling of the room. The forecastle was, of course, small, and if any considerable quantity of steam should be released therein, the air would become moist and manifestly the bunks might well become damp and unfit for human occupancy. Clearly, the furnishing of sleeping quarters in which the air was so moist, be-

cause of escaping steam, that the bunks would become damp, would constitute a violation of the statute.

The voyage in question was the first made by the ship after having been laid up for the winter. Appellant's witnesses testified that, preparatory to going into winter quarters, the ship's pipes were drained and remained empty while the ship was laid up. These witnesses also testified that before starting on the voyage, pipes, valves and radiators were all tested while bearing ordinary steam pressure, and that any apparent defects were remedied. But, of course, as stated by one of appellant's witnesses, radiator valves do occasionally leak. The packing becomes loose, the thread becomes worn, or some other defect develops which permits the escape of steam or water.

Respondent testified that, before the defect which permitted the escape of the steam was remedied, he had contracted a cold, which grew worse day by day and culminated in a severe attack of pneumonia, which required his hospitalization immediately after his discharge from the ship. The jury may have believed from the evidence that, if a quantity of steam did escape from the radiator, the bunk occupied by respondent, because of its nearness to the radiator, would suffer more than any of the other three. They may also have believed from the evidence that, before signing on for the voyage in question, respondent was a strong, healthy young man, in excellent physical condition. This was a matter upon which the jury might have found either way, but that question of fact was clearly presented, each theory being supported by evidence. It clearly appears that, at the time of the trial, respondent's health had been ruined by the ravages of tuberculosis, and that it was unlikely that he could ever again engage in hard manual labor.

Appellant argues that on the testimony the jury

should not have been permitted to find that there was any considerable leakage of steam, or that respondent's bunk ever became damp, citing *Western & Atlantic Railroad v. Hughes,* 278 U. S. 496, 49 S. Ct. 231; *Gunning v. Cooley,* 281 U. S. 90, 50 S. Ct. 231 (in both of which cases the rule is stated, though held inapplicable to the facts presented); *Mandel v. Washington Water Power Co.,* 83 Wash. 19, 144 Pac. 921; *Leach v. Erickson,* 161 Wash. 473, 297 Pac. 738. In the latter case, we held (citing *Fluhart v. Seattle Elec. Co.,* 65 Wash. 291, 118 Pac. 51) that "the verdict of a jury, if contrary to natural laws or physical facts, cannot be sustained."

In view of the Federal statutes and the authorities applicable to the situation, the trial court properly submitted the case to the jury. There was evidence from which the jury might have found that respondent's condition was the proximate result of the condition which for a time existed in the forecastle, and the jury's verdict on the facts is entitled to the usual consideration accorded such a finding.

It appears that the first positive diagnosis of tuberculosis was made during the month of March, 1933, and, while one of the medical experts who testified stated that, in his opinion, respondent probably had a tubercular infection at the time he left the ship, he frankly stated that many people have dormant tubercular infections which are occasionally made active by exposure, fatigue or illness.

The material evidence in the case at bar is not very long, and we have carefully studied the same. It cannot be held that the trial court erred in not rendering judgment in appellant's favor as matter of law. A disputed question of fact was presented, upon which the jury was entitled to pass.

Under the statutes of the United States (46

U. S. C. A. § 688), the provisions of the Federal employers' liability act (45 U. S. C. A. §§ 51-59) are made applicable to seamen. The employers' liability act provides that, in actions based upon alleged violations of safety statutes, the defenses of contributory negligence and assumption of risk are not available. (See *Hatcher v. Globe Union Mfg. Co.*, 170 Wash. 494, 16 P. (2d) 824.)

Appellant assigns error upon the giving of two instructions. By the first instruction complained of, the court told the jury that, under the Federal statute, a warm room should have been provided for the use of the seamen, and that the failure to provide such a room rendered the owner liable to any seaman whose health was injuriously affected as a natural and proximate result of such failure. As we hold that the section of the Federal statute hereinabove discussed is here applicable, the court properly instructed the jury in view thereof.

Appellant argues that the instruction is argumentative and affords the jury an opportunity to infer that any temporary failure to maintain a warm room, or that any accident which might for a time render a room cold, would render the owner liable. There was no evidence to the effect that the room was temporarily cold due to some fortuitous event. Respondent testified that his bunk was damp during several days. Appellant's evidence was to the effect that the amount of steam which escaped was insignificant, and that the room was never damp. The jury could not have been misled by the instruction complained of, which contains no prejudicial error.

By another instruction, the court told the jury that the duty to abstain from negligently injuring another applied to the sick as well as to the strong, and that when this duty was violated, the measure of dam-

ages should be based upon the injury actually done, even though such injury might not have resulted but for some preexisting infirmity on the part of the person injured, even though the later injury might have been aggravated by the preexisting condition. Appellant argues that a seaman impliedly warrants that he is bodily and mentally fit to perform his duties, and that, by the instruction, there was imposed upon appellant the responsibility of taking care of a sick seaman, even though appellant had no knowledge or reason to believe that the seaman was ill.

In the case at bar, the jury might have found that, when respondent shipped aboard the Lakina, he was in good health. It might also have been found that, even though he was suffering from tuberculosis, latent or otherwise, he had no knowledge of that condition, or, possibly, the jury might have found that he was aware of such a condition. If the jury had found that respondent was afflicted with tuberculosis to some extent, but that the same was not active, they might still have found that appellant was responsible for a condition which resulted in "lighting up" the tubercular condition which, but for the condition of the forecastle, might have remained dormant. We find no reversible error in the instruction complained of.

Appellant next complains of the trial court's refusal to give twenty of its requested instructions. The first error complained of upon this phase of the case is that the trial court refused to give two of appellant's requested instructions defining proximate cause, and that the instructions which the court did give did not adequately cover the situation, in that the jury were not told that resort might not be had to speculation, surmise or conjecture, or that the negligent act complained of must have been reasonably expected by a person of ordinary intelligence to produce injury to

another. The jury were properly instructed as to proximate cause. It cannot be held that the failure to use any certain precise formula must be held to constitute reversible error.

The next instructions which appellant contends should have been given at its request covered the matter of possible contributory negligence on the part of respondent, coupled with proximate cause, and, under the law, were properly refused.

In view of the instructions which the court gave, no prejudicial error was committed in failing to give appellant's requests numbers 14 and 15.

Requests numbers 16, 17 and 18 deal, the first with the duty of the master, imposed by the maritime or common law, to furnish seamen with safe quarters, and the others with the matter of assumed risk. Under the Federal statute which we hold applicable to this case, these instructions were properly refused.

Appellant's request number 19 reads as follows:

"You are instructed that the defendant was only required to furnish to the plaintiff and its other employees living quarters reasonably suitable and safe for seamen possessed of good health; and the defendant was not required to furnish a place designated to meet all the special requirements and needs of a seaman suffering from lung trouble, colds, or from pulmonary tuberculosis either in an early or advanced stage."

This instruction should not have been given, as it was not applicable to the evidence. Under appellant's evidence, the forecastle was in good condition; under respondent's evidence his bunk was for several days not fit for human occupancy, whether the occupant was sick or well. Respondent's only complaint of the room was that in connection with the asserted dampness of his bedding. He did not contend that sufficient

heat was not furnished, or that the room was otherwise unsafe or cold. Respondent's bunk in the forecastle was either good enough for anyone or totally unfit. The instruction was properly refused.

By its request number 20, appellant asked that the jury be instructed:

"Even though you should find by a fair preponderance of the evidence that the injuries of which the plaintiff complains were caused by his experiences on the S. S. Lakina during the period mentioned, yet if you should further find that such injuries, if any, were caused by the ordinary incidents of a seaman's occupation, such as standing watch in a hot engine room, physical exertion and exposure to varying weather conditions, then your verdict must be in favor of the defendant, Alaska Steamship Company."

By its instructions, the court told the jury that no verdict in respondent's favor could be returned unless the jury found that the appellant was negligent as charged, and that such negligence was the proximate cause of respondent's illness. Some of appellant's witnesses gave testimony from which the jury might have believed that respondent was not in robust health when the voyage commenced, but there is no foundation in the evidence for a finding that his work during the voyage caused him to become sick, or that he was injured by varying weather conditions. The instructions given were adequate and properly covered the issues.

Appellant next (request number 21) asked that the jury be instructed that, if they should find that respondent contracted tuberculosis prior to his employment on the Lakina, then their verdict should be in favor of appellant. This instruction was incorrect, as, even though the jury might have believed that respondent had some latent tubercular infection which might never have become active save for the cold which

he contracted on the voyage, they must still find in appellant's favor.·

Appellant's other assignments of error based upon the court's refusal to give instructions which it requested are without merit. The jury was fully and clearly instructed on all phases of the case, and in so far as appellant's requests contained matter not included by the trial court in its instructions, the requests were properly refused.

Appellant complains of the overruling of its objection to questions propounded to respondent concerning the health of one Goetz, a mess boy on the ship. Respondent was asked concerning Goetz: "Did he have any cold when he went aboard?" to which question respondent replied, after appellant's objection was overruled, that he could not say whether he did or not. Answering a further question as to whether Goetz had a cold when he left the ship, respondent replied in the affirmative. Appellant argues that this testimony introduced a collateral issue in an attempt to show that Goetz contracted tuberculosis as a result of his employment on the Lakina.

In view of respondent's testimony to the effect that he did not know whether or not Goetz had a cold when he signed on, his statement that the man had a cold when he left is not particularly material. The question was not whether Goetz had tuberculosis, but merely whether or not, when he left the ship, he had a cold. It cannot be held that the overruling of appellant's objection constitutes reversible error.

Appellant next complains of the ruling of the trial court sustaining respondent's objection to questions propounded by appellant's counsel to its witness O'Brien. O'Brien, who occupied the bunk under that of respondent, was asked whether or not during the

trip he heard any of the occupants of the forecastle in question complain about wet bedding. To this question, respondent's counsel objected, upon the ground that complaints would not be directed to O'Brien. Objection was also sustained to a question propounded to the witness as to whether or not he had heard any of the occupants of the room complain about the radiator leaking. O'Brien was the man who testified that he fixed the radiator, respondent having testified that O'Brien had said that he had complained of the leak. In connection with this phase of the testimony, appellant's counsel asked O'Brien if he ever had complained of the leak, to which question an objection interposed by respondent was sustained. The witness O'Brien was permitted to testify that he had never told respondent that he (O'Brien) had made any complaint concerning the escaping steam.

This latter question was a matter pertinent to the question to be determined by the jury. Whether or not O'Brien had, in fact, made any complaint, was unimportant. He was permitted to deny that he had ever told respondent that he had made a complaint. The questions to which respondent's objections were sustained were not proper, and it cannot be held that O'Brien should have been allowed to answer the questions to which respondent's objections were sustained.

On cross-examination, respondent's counsel asked the witness O'Brien whether, at the time he boarded the ship, the witness Goetz had a cough, and again whether Goetz coughed "a little more than a man ordinarily coughs." To the first question, O'Brien (appellant's objection being overruled) answered that he did not remember, the second question having been answered substantially in the negative. Appellant complains of the overruling of its objections to these questions, but it cannot be held that they were important

or that any prejudicial error resulted from the rulings of the court in connection therewith.

Finally, appellant assigns error upon the denial of its motion for a new trial. According to the statement of facts, the trial court, in passing upon this motion, intimated that it was his personal view of the evidence that it appeared that respondent was suffering from tuberculosis prior to shipping on the Lakina, but that, in view of the recent statute relating to the matter of granting new trials, the court was of the opinion that the jury's verdict could not be disturbed. Appellant contends that the trial court, in passing upon the motion for new trial, felt unduly restricted by the statutes referred to (Rem. 1935 Supp., §§ 399, 399-1 [P. C. §§ 8225, 8225-1]), which were considered by this court in the cases of *Brammer v. Lappenbusch,* 176 Wash. 625, 30 P. (2d) 947, and *Hatcher v. Globe Union Mfg. Co.,* 178 Wash. 411, 35 P. (2d) 32.

The cases cited were both decided by this court several months prior to the denial of the motion for a new trial in the case at bar, and in view of this fact, we cannot hold that the trial court felt that he lacked authority to pass upon the motion for new trial, save in accord with the rule laid down by this court in the cases referred to. The language of the trial court is not clear, but apparently rather refers to a difference of opinion between it and the jury upon disputed questions of fact, upon which questions it was the province of the jury to pass.

The trial court refused to reduce the award in respondent's favor and entered judgment for the amount of the verdict without offering respondent the option of accepting a less amount or standing a new trial. We cannot hold that the verdict, while large, is without the evidence, and that this court should make any order in connection with the amount thereof.

Finding no error in the record, the judgment appealed from is affirmed.

TOLMAN, BLAKE, HOLCOMB, and MAIN, JJ., concur.

*Kahin & Carmody*, for respondent.

[1]Reported in 52 P. (2d) 1264.